CHARLES W. HAWKES *vs.* THE FIRST NATIONAL BANK OF GREENFIELD, administrator with the will annexed.

THE FIRST NATIONAL BANK OF GREENFIELD, administrator with the will annexed, *vs.* CHARLES W. HAWKES.

Franklin.    September 19, 1928. — October 8, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Equity Jurisdiction,* Accounting, Laches. *Partnership,* Accounting after death of partner. *Equity Pleading and Practice,* Consolidation of suits; Master: findings; Exceptions; Appeal. *Waiver.*

Two brothers inherited their father's farm at his death in 1879, and thereupon operated the farm as partners until the death of one of them in 1925. None of the property ever was separated, but was treated as the common property of both. The brothers lived and worked together on the farm, using the produce therefrom and purchasing for their needs from their common funds, which were handled chiefly by the brother who afterwards died. Investments also were made by him. In 1902 he bought land, taking title in his own name, and in 1904 built a house thereon, the labor being performed by him and by his brother and his brother's son, and some of the lumber coming from the farm; and he thereafter lived in his new home, but continued to work on the farm and to use the produce therefrom as before, and the two brothers, with the son of one of them, did the necessary work about the new house. Neither brother kept any accounts, nor was there ever any accounting

between them, nor any protest by either as to the expenditures of the other. Although the brother who survived had supposed that all business was done in the name of the partnership, it was found at the death of his brother that some of the property and investments had been held in that brother's name alone, and they were claimed by the administrator of his estate. The surviving brother operated the farm alone after his brother's death. In cross suits for accounting commenced in 1926 and 1927 between the surviving brother and the administrator, and heard together by a master, the master found the facts above stated and found that substantially all the property standing at the death of the deceased brother in the name of the partnership and of either brother was their common property. The master also stated an account showing the amount of partnership property in the hands of the surviving brother and of the administrator, and the amount due from the surviving brother on account of his management after his brother's death. A final decree was entered in each suit, ordering the defendant therein to pay to the plaintiff the amount found by the master to be due. Upon an appeal by the administrator in each suit without a report of the evidence, it was *held,* that

(1) The master's findings were not plainly wrong nor inconsistent one with another and must stand;

(2) Laches on the part of the surviving brother did not appear;

(3) Since it appeared from the master's report that the accounts between the parties were stated as well as possible, no further order in connection therewith was necessary.

Although it was stated, by a party who appealed from an interlocutory decree overruling that party's exceptions to a master's report in a suit in equity, that exceptions not argued were not waived, such exceptions nevertheless were waived by the party's failure to argue them.

No issue having been raised nor findings made in the suits in equity above described concerning debts of the partnership, and it appearing, from the record of an action pending before this court at the same time, that a creditor of the partnership had recovered judgment in an action against the administrator, this court, in order that all matters of accounting as to the partnership might be concluded without the necessity for further suits, by rescript gave leave to the administrator to file a motion that the suits be consolidated and that he be allowed to make appropriate amendments setting out the recovery of judgment by the creditor and seeking an accounting of that debt and any other debts; and ordered that, if such motions were made within a certain time the final decrees were to be reversed and the suits were to stand for further proceedings; otherwise the decrees were to be affirmed.

TWO BILLS IN EQUITY, filed in the Superior Court on October 28, 1926, and April 1, 1927, respectively, and described in the opinion.

The suits were referred to a master and were heard by him together. Material facts found by the master are stated in the opinion. By order of *Burns,* J., an interlocutory decree

was entered in each suit confirming the master's report; a final decree was entered in the first suit ordering the defendant to pay the plaintiff the sum of $6,187.15 and interest in the sum of $590.87 from October 28, 1926; and a final decree was entered in the second suit ordering the defendant to pay the plaintiff the sum of $934.44 and interest in the sum of $65.41 from April 1, 1927.   The First National Bank of Greenfield appealed in each suit from the interlocutory and the final decrees.

*W. A. Davenport,* (*W. L. Davenport* with him,) for The First National Bank of Greenfield.

*H. Sherman,* for Hawkes.

RUGG, C.J.   These are suits concerning an accounting of the affairs of the copartnership formerly existing between Charles W. Hawkes and his brother Stephen W. Hawkes. The latter has died.   Of his estate The First National Bank of Greenfield is administrator with the will annexed.   Both cases were referred to the same master who has made comprehensive findings covering apparently all the issues presented by the parties at the hearing.

The facts, thus found material to the present discussion, are that, upon the death of their father in 1879, these two brothers who had always lived and worked at home save for the brief absence of one at school, formed the copartnership by word of mouth and without any writing.   The business of the partnership was farming.   It was conducted on the home farm, formerly owned by their father, continuously until the partnership was dissolved by the death of Stephen in 1925.   It lasted about forty-six years.   Their mother lived with the copartners on the farm until her death in 1900. The brothers inherited their shares of the estate of each parent and purchased out of their common funds the share of the only other child.   None of the property thus acquired was separated but it was treated as the common property of both brothers in the copartnership.   "The two brothers worked together on the farm, both living on the place, using provisions raised and produced on the farm, and purchasing other needs with their common funds.   Charles married and his wife has since then and till the present time lived there,

acting as housekeeper, with no change in arrangements (except to have the assistance of the son of Charles when he was old enough to help) until Stephen was married in April, 1902, when he boarded for about two years away from the farm but continued to work on the farm part of the time. In 1902 Stephen bought, in his own name, a small piece of ground . . . and later a larger tract adjoining, . . . both being situated a short distance away from the old home. In 1904 a house of some pretentions, estimated by a builder to have cost at that time about $6,300, was erected on . . . [this land] and occupied by Stephen and his family until his decease. . . . The house was erected partly by Charles and his son and Stephen, with the assistance of carpenters, brickmasons and other artisans; the teams from the home farm being used in excavating and drawing lumber and other materials — the rough lumber being cut from the timberlands of the home farm and as well as some of the dressed and finish lumber. . . . After Stephen took up his abode in the new home, he continued to work on the home farm much as he had done in the past, and continued to use provisions therefrom, and Charles, together with his son and Stephen, cut the hay and did work on the premises of Stephen's home when needed; this arrangement continuing until the death of Stephen." Charles W. Hawkes, the surviving partner, kept no account of the receipts and disbursements and knew of none being kept by his brother, and no such accounts were produced at the trial. "On occasions when milk or vegetables were sold, the money coming into the hands of Charles W. Hawkes was used for the common family needs, but the proceeds of the sale of anything of considerable value were turned over to Stephen W. Hawkes, who from time to time, purchased produce and other needs of the family, tools, . . . [and other like things,] and made investments in the way of loans secured by mortgages; also purchased some shares of stock, and leases were made of portions of the farm for mining purposes. At one time buildings on the farm were burned and were subsequently rebuilt and refurnished with the common funds. . . . The plaintiff testified in substance, and same was undisputed, that he supposed that all business

was done in the name of the copartnership, but at the decease of Stephen W. Hawkes it was found that some investments and properties were held in the name of Stephen only, and were appraised and claimed by the administrator as property of Stephen."

There was never any accounting between the brothers, and there was no protest or objection by either as to the amount expended by the other or the mode of living in either family.

The conclusion of the master from all the evidence is "that at the time of the decease of Stephen W. Hawkes, all the property in the name of C. W. and S. W. Hawkes, Charles W. Hawkes, or Stephen W. Hawkes, including the home farm and personal property therein, the Stephen W. Hawkes's home and furnishings, also the automobile used by Stephen W. Hawkes, also the investments, cash on hand, and other estate found after the decease of Stephen W. Hawkes, except only the sum of $1,995 . . . received by Stephen from the Agricultural Society, [which was his sole property and not a part of the partnership funds,] was the common property of the plaintiff and Stephen W. Hawkes as set forth in the plaintiff's bill, and I so find." The master proceeds to state the accounts between the partners on the basis of these findings. He states the amount of personal property in the hands of the bank as administrator of the estate of the deceased brother belonging to the copartnership. He states also the amount of personal property in the hands of the surviving partner belonging to the copartnership. He also states the amount due from the surviving partner on account of the management of the partnership property since its dissolution. A final decree was entered in each case ordering each defendant to pay over to the plaintiff the balance thus found to be due on settlement of the personal property of the partnership in the hands of each defendant. From each decree the administrator of the deceased partner appealed.

There is no report of the evidence. Therefore the findings of the master must be accepted as true unless on their face inconsistent one with another or plainly wrong. There is

nothing about this report to warrant a refusal to accept its conclusions.

Laches is relied upon by the administrator of the deceased partner as a reason why the surviving partner ought not to recover. With reference to that subject the master has found that the surviving partner during the existence of the partnership never asked his brother about the record title to any of the properties, and never examined the records in the registry of deeds, and that the deceased partner never told his brother that title to the land, securities, moneys and other property was taken in his name and that the surviving partner until after the death of his brother had no knowledge that the title to these properties was in the name of the deceased partner but believed that the title thereto was acquired in their joint names. These circumstances constitute no bar to an assertion of partnership rights by the surviving partner within a reasonable time after his discovery of the facts. Partners occupy a trust relation toward each other. They are bound to exercise the utmost good faith toward each other. *Flint* v. *Codman*, 247 Mass. 463, 471, and cases cited. The obligation to keep books of account rested no more heavily upon one partner than upon the other. These partners appear to have led a simple life. The even tenor of their ways seemingly did not involve much risk in the conduct of their business or great fluctuations in receipts and expenditures. There is nothing to indicate that their habits were widely different or that their tastes were diverse. The larger items of income and the savings by mutual consent were during a long time passed to the deceased partner. While there was business laxity in such prolonged confidence in each other without accounting or division of property, there is nothing in all this conduct to bar proceedings at this time to wind up the partnership affairs. The circumstance that this is done after the lips of the one who knew as much about the facts as does the surviving partner are sealed in death demands careful scrutiny of the testimony of the survivor and judicious weighing of all the evidence to be sure that the burden of proof is sustained, and that no injustice is done. There is nothing

to indicate that all these factors were not in the mind of the master.  He has not found laches.  That is commonly a question of fact.  In our opinion, it cannot be said that the conduct of the surviving partner bars him from asserting his rights in view of all the circumstances.  Doubtless conditions may exist where failure to keep any partnership books will bar a partnership accounting.  *Stout* v. *Seabrook,* 3 Stew. (N. J.) 187, 191, affirmed in 5 Stew. (N. J.) 826.  *Ryman* v. *Ryman,* 100 Va. 20, 24.  The cases at bar do not belong to that class.  The arguments addressed to us are in substance that the findings of fact by the master ought to have been different.  But as already pointed out that is not within our province on this record.

No one of the cases cited in argument requires analysis or discussion.  The principles as to the equitable doctrine of laches are fully recognized by this court.  *Stewart* v. *Finkelstone,* 206 Mass. 28, 36, 37, and cases cited.  They are not applicable to the facts here found.  As was said in *Southern Pacific Co.* v. *Bogert,* 250 U. S. 483, 488, 489, "the essence of laches is not merely lapse of time.  It is essential that there be also acquiescence in the alleged wrong or lack of diligence in seeking a remedy."

The administrator of the deceased partner has urged that the surviving partner be ordered to file an account.  Apparently from the master's report the account is stated as well as it can be stated.  No further order is necessary in the circumstances.

It is not necessary to review in detail the exceptions to the master's report.  There is no merit in any of them.  They have not been argued orally or upon the brief.  It is stated that these exceptions not argued are not waived.  This is not sufficient to require the court to discuss such exceptions.  They are waived, nevertheless, by failure to argue.  *Commonwealth* v. *Dyer,* 243 Mass. 472, 508.

The master has made no finding as to debts of the co-partnership.  Apparently in these suits no issue has been raised concerning that subject.  We know, however, from *Hawkes* v. *First National Bank of Greenfield, post,* 545, argued and decided on the same date as these cases, that there is at

least one partnership debt of considerable comparative magnitude of which no notice has been taken in the cases at bar.   Both these suits are in substance proceedings to wind up the partnership affairs.   All matters of accounting ought to be concluded in these proceedings, so that litigation on that subject between the surviving partner and the estate of the deceased partner will be ended and no further proceedings be needed.   A proper course would be for these two suits to be fused into one by consolidation, as pointed out in *Lumiansky* v. *Tessier*, 213 Mass. 182, 189, so that all rights of both parties may be adjusted in one decree.   The administrator of the estate of the deceased partner is given leave within thirty days from the date of these rescripts to move that these suits be so fused and to move for appropriate amendment setting out the recovery of the judgment in the action of Harry F. Hawkes against it and for the accounting of that and other debts, if any.   If such motion and amendment are filed, then the decrees may be reversed and the case stand on the master's reports already filed for the disposition of the new issues raised by such amendment and for the stating of the account in accordance therewith; and for the entry of a final decree adjusting the rights of the respective parties.   If no such motions are filed, the decrees are to be affirmed.

*Ordered accordingly.*