**BAKER MANUFACTURING COMPANY,**
Plaintiff-Appellee,

v.

**WHITEWATER MANUFACTURING COMPANY, Defendant-Appellant.**

No. 17863.

United States Court of Appeals,
Seventh Circuit.

July 30, 1970.

Rehearing Denied Sept. 24, 1970.

Allan B. Wheeler, Wheeler, Wheeler, House & Clemency, Milwaukee, Wis., for defendant-appellant; Bernard Goldstein,

---

Bass, Goldstein & Moglowsky, Milwaukee, Wis., of counsel.

Paul R. Puerner, Daniel Van Dyke, Michael, Best & Friedrich, Milwaukee, Wis., for plaintiff-appellee.

Before MAJOR and CASTLE, Senior Circuit Judges, and KILEY, Circuit Judge.

MAJOR, Senior Circuit Judge.

This action, filed April 29, 1965, was brought by Baker Manufacturing Company (Baker) against Whitewater Manufacturing Company (Whitewater), charging infringement of patent No. 2,657,633, the subject matter of which was "Pump Construction." Whitewater defended on the grounds of invalidity and non-infringement. It also invoked numerous affirmative defenses, including laches, upon which it relied as a bar to the relief sought by Baker.

The district court in a memorandum opinion discussed in meticulous detail all aspects of the validity and infringement issues, both of which it decided adversely to Whitewater. The court also decided all affirmative defenses relied upon by Whitewater, including laches, adversely to it. Pursuant thereto, the court entered its judgment on May 12, 1969, adjudicating the patent valid and infringed, and holding that the suit was not barred by laches. Whitewater was permanently enjoined and restrained from the manufacture and use of the equipment held to infringe during the unexpired term of the patent, and the court rendered judgment against it for damages to be determined by an accounting. From this judgment Whitewater appeals.

A thorough study of the factual situation leads us to the definite conclusion that the court erred in denying the defense of laches, and the judgment must be reversed for that reason. Such being our conclusion, we think there is no point in discussing the rather voluminous testimony as it relates to other issues. See Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 213 F.2d 153, 154. In approaching the issue of laches, we recognize, of course, the firmly established rule that a decision on such issue is addressed to the sound discretion of the trial judge, which will not be disturbed on appeal unless it is so clearly wrong as to amount to an abuse of discretion. We need not cite authorities in support of this rule because it is relied upon by Baker and recognized by Whitewater.

The district court rendered a memorandum opinion, including its findings relative to the issue of laches and the reasoning employed in exercising its discretion to deny the defense. Before discussing that opinion, as we shall later do in some detail, we think it appropriate to consider two issues treated at length in the briefs of the respective parties where there is an unreasonable delay in the commencement of a suit for infringement, (1) is the burden on the plaintiff to excuse such delay? and (2) in such case, is there a presumption that the alleged infringer has been damaged? In connection with these issues it must be kept in mind that Baker gave notice in 1956 to Whitewater of its claimed infringement and that suit was not commenced until April 1965, a period of more than nine years.

While there is some contrariety of views among the courts on these issues, we are convinced that by the great weight of authority, including the decisions of this court, the burden is on the patentee to excuse an unreasonable delay. We also think, even though the authority is less compelling, that under such circumstances there is a presumption that an alleged infringer has been damaged.

Gillons et al. v. Shell Co. of California, 86 F.2d 600, 601 (CA-9), cert. den. 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532, appears to be the leading case on these issues, widely cited with approval in that and other Circuits. See Kimberly Corporation v. Hartley Pen Company, 237 F.2d 294 (CA-9), and Whitman v. Walt Disney Productions, Inc., 148 F.Supp. 37 (S.D.Calif.). In the latter case the

court cited Gillons for the statements (page 39):

"Although not bound by statutes of limitations relating to actions at law, courts of equity will generally draw analogies to them. In patent cases, the 'analogous' period is six years. [35 U.S.C. Sec. 286.] After this length of time, the delay *is presumed to have injured defendant, unless the contrary can be shown by plaintiff.* * * * Reasonable diligence is a prerequisite to invoking the court's aid in the assertion of one's rights. * * *

"In the present case we find an extended period of apparent inactivity by plaintiff, running well beyond the analogous statutory period. *The burden is thus cast upon plaintiff to justify the long delay.* (Italics supplied.)"

And on the following page:

"Nor has plaintiff satisfactorily explained this absence of diligence. In fact the only excuse offered is an alleged lack of funds. By the weight of authority, lack of funds is no excuse for delay in bringing suit. [Citing cases.]"

The reasoning of the district court in this case was approved by the court of appeals of that Circuit. Whitman v. Walt Disney Productions, Inc., 263 F.2d 229, 231 (CA-9).

The same Circuit in Kimberly Corporation v. Hartley Pen Company, supra, 301, cited Gillons for the statement:

"In light of these facts, the long delay [four years] of Kimberly in asserting its claim to equitable ownership of the Sears-Schrader patent in suit *is sufficient in itself to establish that the assertion of such a claim worked to the damage and prejudice of appellee* and fully justified the views of the lower court concerning the bar of laches. [Italics supplied.]"

In General Electric Co. v. Sciaky Bros., Inc., 304 F.2d 724 (CA-6), where the issue was squarely presented, the court stated (page 727):

"Where the unexplained delay [ten years] exceeded the applicable period of the statute of limitations, *injury to the defendant is presumed.* In a patent infringement action equitable principles are applied. Equity will not aid those who have slept on their rights. The failure of General Electric to take action over the many years constituted laches. [Citing many cases, including Gillons v. Shell, supra.] [Italics supplied.]"

In Potash Co. of America v. International Minerals & Chemical Corp., 213 F.2d 153, 156 (CA-10), the court affirmed a defense of laches with the statement:

"In patent cases it is inequitable for an infringer to deprive the owner of a patent of royalties and other rights which the patent affords. It is equally inequitable for the patent owner to sleep on his rights and lead an infringer to make large investments in the belief that he is not infringing or that the patent rights are not to be pressed."

In Tracerlab, Inc. v. Industrial Nucleonics Corp., 204 F.Supp. 101, the district court of Massachusetts held that plaintiff's suit for patent infringement was barred because of its unexplained delay (eight years) in bringing suit, and stated (page 104):

"Plaintiff should have brought its action promptly when it knew its rights were being violated. It cannot expect relief from equity when it sleeps on its rights and permits defendant, in reliance on such inactivity, greatly to expand its business and then confronts defendant with a costly and burdensome action."

We do not agree with Baker's suggestion that the citation of this case is misleading as it was reversed, 313 F.2d 97 (CA-1).

The trial court decided the issue on a motion for summary judgment and the appeals court reversed on the ground that the patentee was entitled to a trial

on the factual issue of knowledge. In so doing it stated (page 102):

> "Invocation of the doctrine of laches requires not only the passage of time but an acquiescence—either express or implied—in the alleged wrong. Hawkes v. First National Bank of Greenfield, 264 Mass. 538, 544, 163 N.E. 246 (1928). Since acquiescence must be predicated on knowledge—again, either express or implied—and since we disagree with the trial judge's conclusion as to this factor, we find laches to be no bar at this stage of the proceeding. [Citing cases.]"

Cases relied upon by Baker which furnish no more than meager support for what we think is the minority rule on the burden of proof are Ransburg Electro-Coating Corp. v. Nordson Corporation, 293 F.Supp. 448, 484 (N.D. Ill.); Galion Iron Works & Mfg. Co. v. Buffalo-Springfield Roller Co., 108 F.Supp. 811, 815 (S.D. Ohio); Briggs v. M & J Diesel Locomotive Filter Corp. et al., 228 F.Supp. 26, 62 (N.D. Ill., affirmed 342 F.2d 573, 7th Cir.). In Ransburg, laches appears to have been a minor issue as, in a 36-page opinion, it is disposed of in a single sentence (page 484), "The burden of proof rests upon the party asserting the defense of laches." In Briggs, cited in support of this statement, the issue of laches was also abruptly disposed of, and this court on appeal affirmed Briggs without mention of such defense. In Gilion, an Ohio district court held that the burden of proof to establish the defense of laches was on the defendant, citing Shaffer et al. v. Rector Well Equipment Co., Inc., 155 F.2d 344, 347 (CA-5).

On the burden of proof issue, we have perhaps devoted more attention to the cases than necessary because the decisions of this court, as we shall now show, firmly stand for the rule that a patentee who unreasonably delays asserting his rights carries the burden to prove his excuse for such delay.

In Universal Coin Lock Co. v. American Sanitary Lock Co. et al., 7 Cir., 104 F.2d 781, 782, the question for decision was, "Has plaintiff been guilty of laches amounting to an estoppel against its claim for damages?" In answering this question in the affirmative, the court cited with approval Window Glass Machine Co. v. Pittsburg Plate Glass Co., 284 F. 645, 650 (CA-3), and Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 64 F.2d 185, 187 (CA-3). We quoted from Window Glass (page 782):

> " 'When delay in prosecuting a claim is so unusual as to carry with it the appearance of being unreasonable, as in this case, *there devolves upon a plaintiff the burden of disclosing the impediments to an earlier action;* of showing, if ignorant of his rights, how he had remained in ignorance so long; and of revealing how and when he first came to a knowledge of the matters on which he relies in his bill for relief. [Italics supplied.]' "

We quoted from Westco-Chippewa (page 783):

> " 'The evidence does not disclose any excuse justifying this long delay. No case is an exact precedent for another because the facts in no two cases are exactly alike, but a uniform principle runs through all the cases. *They proceed on the theory that the plaintiff knows his rights and has had ample opportunity to establish them in the proper forum; that, because of delay, the defendant has good reason to think that the plaintiff believes his asserted rights to be worthless or that he has abandoned them.* * * *

> " 'The question of laches then assumes the aspect of *the plaintiff having stood by and having done nothing to protect its rights for seven years* while the defendant was building up a business, which it thought was legitimate, and spending money in constructing a large plant. [Italics supplied.]' "

We also quoted (page 783) from Dwight & Lloyd Sintering Co. v. Greenawalt, 27 F.2d 823, 827 (CA–2):

"'Each year as it passes inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded. * * *'"

In Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 135 F.2d 617, this court in affirming the district court which had ruled in favor of the defense of laches (delay of seven years) stated (page 619):

"Thus, when deferment of action is so unusual as to appear unreasonable, *upon plaintiff devolves the burden of disclosing and explaining the impediments to early action; of showing, if ignorant of his rights, how or why he has so long remained in ignorance and of revealing how and when he first acquired knowledge of the matters of which he relies as an excuse.* [*Citing* cases.]

"Of necessity there must be a balancing of equities. It is seemingly unjust that any one should be allowed to infringe a valid patent and deprive its owner of royalty to which the patent entitles him. On the other hand, it is inequitable for a person to sleep on his rights for years and lead another to think that the latter is safe in following counsel's advice that he may manufacture a proposed device with impunity, and then, when he has made extensive investments and built up a prosperous business, penalize him and innocent investors for doing what might have been averted by timely action. Thus, there are two elements in effective laches; (1) Lack of diligence on the part of the plaintiff; (2) injury to defendant due to such lack. [Citing cases.] [Italics supplied.]"

In Brennan v. Hawley Products Co., 7 Cir., 182 F.2d 945, we again affirmed the district court which had ruled in favor of the defense of laches (delay of eight years). In doing so we cited and quoted with approval our decision in Universal Coin Lock Co. v. American Sanitary Lock Co., et al., supra, and stated (page 948):

"In the case at bar the record shows not only a long delay on the part of the plaintiff in instituting litigation on his claims of infringement, but also such a change in the condition of the defendant that it would be inequitable to allow plaintiff to enforce his claim for infringement. Not only has the defendant expended large sums of money in the extension of its manufacturing facilities, but two of its most important witnesses have passed away.

"*The plaintiff offers no legally adequate excuse for his inaction.* * * [Italics supplied.]"

In Boris v. Hamilton Manufacturing Company, 253 F.2d 526, this court again affirmed a judgment dismissing a suit for patent infringement on the ground of laches (delay of ten years), and stated (page 529):

"Mere delay does not constitute laches but when deferment of action to enforce claimed rights is prolonged and inexcusable and operates to defendant's material prejudice, we find laches to be an effectual bar, *with the burden of satisfactory explanation devolving upon the plaintiff.* Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 1943, 135 F.2d 617, 619. Laches is an equitable doctrine not fixed by any unyielding measure, but to be determined in each case under its factual situation, and allowable ' " 'where the enforcement of the asserted right would work injustice.' " ' Potash Co. of America v. International Minerals & Chemical Corp., 10 Cir., 1954, 213 F.2d 153, 155, and cases therein cited. [Italics supplied.]"

We have no way of knowing the reasoning employed by the district court in deciding the issue of laches adversely to Whitewater other than that contained in its memorandum opinion. Nowhere in its opinion does it state upon which party it placed the burden of proof, but if

Baker made the same argument there as it does here, as we presume it did, it must have been upon Whitewater. In fact, its opinion so indicates.

We adopt the following statement from the court's unpublished opinion:

"In 1955, the defendant began using the O-ring combination. In February, 1956, Baker gave the defendant written notice of infringement. A conference was held at which Messrs. Tubbs, Stevenson and Baker were present; at that time, the defendant neither admitted nor denied infringement. According to Mr. Baker, the defendant stated that it needed time to consider the Baker patent.

"On September 19, 1957, Mr. Baker wrote to Messrs. Stevenson and Tubbs, stating 'I believe we can now resume the negotiations which we tabled about a year ago * * *.' (Pl. Exh. 11). The letter went on to propose licensing agreements. The parties have stipulated that (1) the defendant neither attempted nor did in fact communicate with the plaintiff regarding the patent in suit subsequent to September 19, 1957 through April 29, 1965, [57] the date this suit was instituted, and (2) the defendant does not know of any written or oral communication in which the plaintiff represented that the charge of infringement had been settled."

The court in the exercise of its discretion to deny the defense of laches reasoned:

"Notwithstanding the plaintiff's delay, I do not believe that the defendant is justified in its asserted belief that the plaintiff had abandoned its claim. The evidence reveals that the defendant received early notice of infringement; that after initial negotiations, the defendant ignored the plaintiff's request for further negotiations and settlement; and that at no time did the plaintiff suggest that it was abandoning its claim of infringement."

■■ In our view, this reasoning erroneously places the burden on Whitewater, the alleged infringer, to take affirmative action which would rescue Baker from its inexcusable neglect over a period of nine years, contrary to the decisions of this court previously discussed. An alleged infringer acting in good faith is under no obligation, so far as we are aware, to take affirmative action relative to the alleged infringement. Of course, it can proceed under the Federal Declaratory Judgment Act, Title 28 U.S.C.A. Sec. 2201, for an adjudication of its rights, but this court has held that it is not obligated to pursue this remedy. Brennan v. Hawley Products Co., 7 Cir., 182 F.2d 945, 949. The fact that Baker did not suggest that it was abandoning its claim of infringement is irrelevant. The important fact is that at no time did it notify Whitewater in any manner that it was pressing its claim.

Baker's exhibit 11 (cited in the trial court's opinion, supra) is in our view neither beneficial to Baker nor detrimental to Whitewater on the issue of laches. The letter is from Baker, directed to both Tubbs and Whitewater, and has to do with a patent owned by Tubbs as well as the patent involved in this suit. In pertinent part it states:

"We, therefore, propose that Mr. Tubbs sell us a non-exclusive, non-transferable license under U.S. Patent 2,793,699 to manufacture and sell structures, defined by drawings included as exhibits in the license, for the life of the patent and that we sell the Whitewater Manufacturing Company a non-exclusive, non-transferable license under U.S. Patent 2,657,633 to manufacture and sell structures defined by drawings included as exhibits in the license for the life of the patent."

This letter does not renew the charge of infringement which Baker made against Whitewater in 1956. In fact, it specifically states, "It be understood that neither party is admitting infringement of any patent * * *." In a P.S. to the

letter, Baker states, "I hope we can get together shortly * * *."

This was the last communication between Baker and Whitewater relative to the patent in suit. In substance, it proposed nothing more than that Baker would take a license from Tubbs on his patent and sell Whitewater a license on the patent in suit. Some eight years later, more than nine years from the time Baker gave Whitewater notice of infringement, the present suit was instituted.

This cross-licensing proposal on the part of Baker is similar to the situation described in General Electric Company v. Sciaky Bros., Inc., 304 F.2d 724, 727 (CA-6):

> "The fact that General Electric wanted licenses on Sciaky's patents and negotiated with Sciaky on a cross-licensing basis did not in our judgment excuse the long delay in enforcing its own rights. The District Court found that in so doing General Electric was engaged in a 'fishing expedition.' In any event, the negotiations between the parties ceased in 1951 and General Electric took no action until seven years later."

Baker's reason for its long delay in pursuing its patent rights is aptly described in the opinion of the district court:

> "Mr. Baker testified that after failing to receive a response, he concluded that further negotiations would be fruitless and proceeded to consult counsel with respect to what the next course of action would be, particularly as to the expense involved in prosecuting an infringement action. The plaintiff's attorney estimated that such an action would cost approximately $15,000. At the same time, Baker conducted a sales survey to determine the volume of sales of its competitors' pitless adaptors, including Whitewater's. As a result of such survey, the plaintiff concluded that due to the relatively modest potential recovery as compared to the litigation expense, it would be unwise to proceed then with a law suit."

Thus, Baker's excuse for the long delay in its simplest form rests on its decision to remain silent and wait until litigation would be worthwhile. It purposely adhered to this course for a period of at least seven years. In the meantime it kept Whitewater under surveillance for the purpose of determining its development and growth. Only when it was satisfied in this respect did it press its claim for infringement by filing the instant case. It is pertinent to note that Baker does not claim that it was at any time a pauper or without the means to finance a law suit; in fact, the record clearly indicates to the contrary.

The only case relied upon by Baker in support of its excuse for delay until its recovery could be greater is Tripp v. United States, 406 F.2d 1066, 1071 (U.S. Ct.Cl.), where suit was brought against the government by the patentee nearly five years after giving written notice of infringement. The court stated:

> "Defendant was not prejudiced by the timing of plaintiff's suit as it had, from the date of issue of the patent, notice of plaintiff's intent to demand compensation, *an intent which was consistently expressed.* Plaintiff, an individual, could reasonably delay bringing suit until he could determine that the extent of possible infringement made litigation monetarily ripe. [Italics supplied.]"

On the same page the court further emphasized that the patentee *"has consistently demanded compensation for unauthorized usage by the Government of his patented invention* [italics supplied]." In marked contrast, in the instant case Baker at no time demanded compensation during the period of nine years after it had given notice of infringement and remained silent for seven years after it had offered Whitewater a license. In our view, Tripp is of no benefit to Baker.

As an additional excuse, not mentioned by the district court, Baker on brief suggests that early in 1962 it was confronted with the immediate obligation of defending two patent suits involving a very large potential liability.

It argues that due to the pressure of this litigation it was unable to handle other patent litigation until 1965, when the instant suit was filed. We think this excuse without merit. It does not explain why Baker remained silent from 1957 to 1962, a five-year period. It is unrealistic to believe that Baker became so involved in other litigation that it could not file a suit against Whitewater for infringement and depend upon a court to give it such time to prepare and try its case as circumstances might justify. It certainly could have found time in 1962, as it could have in any of the proceding five years, to notify Whitewater that it was pressing its claim of infringement.

As we have shown from the court's memorandum opinion, its reasoning in denying the defense of laches was not in accordance with the prevailing principles of law. We hold that the court erred in denying the defense of laches, and that such defense is a bar to any relief sought by Baker against Whitewater.

The judgment is, therefore, reversed and the cause remanded, with directions that the suit be dismissed, with costs taxed to Baker.