MAROVITZ, District Judge.

CONTINENTAL COATINGS CORPORA-
TION, an Illinois corporation,
Plaintiff,

v.

METCO, INC., a New Jersey corporation,
F. H. Ayer Mfg. Co., Inc., an Illinois
corporation, and U. S. Metallizing &
Welding Corp., an Illinois corporation,
Defendants.

Civ. A. No. 68 C 1320.

United States District Court,
N. D. Illinois, E. D.

Jan. 22, 1971.

See also, D.C., 50 F.R.D. 382.

———◆———

M. Hudson Rathburn and Walther E. Wyss, of Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., and Arnold Sprung, of Burgess, Dinklage & Sprung, New York City, for defendants.

William A. Marshall and Alvin D. Shulman, of Merriam, Marshall, Shapiro & Klose, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION

### Defendants' Motions For Summary Judgment

This is a patent infringement brought by Continental Coatings Corporation (Continental), an Illinois corporation, against Metco, Inc. (Metco), a New Jersey corporation, and two of Metco's customers, F. H. Ayer Mfg. Co. (Ayer) and U. S. Metallizing & Welding Corp. (MW), both of which are Illinois corporations. The patent in the suit, U. S. Letters Patent No. 2,904,449 (Bradstreet Patent) is entitled "Method and Compositions for Flame Spraying" and allegedly directed to a method for applying a coating of crystalline refractory oxide by a flame spray process. This patent was issued on September 15, 1959 to the Armour Research Foundation of Illinois Institute of Technology, Chicago, Illinois, now known as the IIT Research Institute (IIT). Originally, Continental was an exclusive licensee under the patent. Subsequently, IIT assigned the Bradstreet Patent to Continental.

Defendant has filed two motions for summary judgment. The first seeks dismissal of the Complaint following declaration that patent claims 1, 2, 6 and 8, the only claims allegedy infringed, are invalid. The second motion seeks dismissal following a determination that the patent is unenforceable by reason of laches in that the delay in bringing the present action was unreasonable and unexplainable.

■ Essentially, summary judgment is appropriate where there is no substantial factual controversy requiring a trial and one party is entitled to prevail as a matter of law. Chicago Joint Board, Amalgamated Clothing Workers of America, A.F.L.–C.I.O. v. Chicago Tribune, 307 F.Supp. 422, 424 (N.D.Ill. 1969). Although perhaps invoked less often than in other areas, John Wood Co. v. Metal Coating Corp., 144 U.S.P.Q. 402, 403 (N.D.Ill.1965), summary judgment is applicable in appropriate patent

cases. See, e. g., Morton Salt v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); A R Inc. v. Electro-Voice, Inc., 311 F.2d 508 (7th Cir. 1962); Central Specialties v. Schaefer, 165 U.S.P.Q. 15 (N.D.Ill.1970).

On the laches issue, at least, the essential facts in this cause are not in dispute. The Bradstreet Patent was issued on September 15, 1959. Although, as exclusive licensee, it was in a legal position to bring suit against Metco, which never conceded the patent's validity and had declined for over three years to become a licensee, Continental delayed such action because of uncertainty regarding who was infringing and because it "wanted to wait to have some commercial success with the invention before proceeding against infringers." (Deft.'s Laches Memorandum Ex. II, at 3–4). However, shortly thereafter, on November 17, 1960, IIT sent notices of infringement to Daman Industries (*Id.* Ex. 4) and Eldorado Manufacturing Co. (*Id.* Ex. V), both of which replied with an indication that the matter had been referred to Metco. Subsequently, Metco expressed its strong feeling that the patent was invalid and told IIT that Metco would hold harmless any of its purchasers as to any possible infringement of the Bradstreet Patent. (*Id.* Ex. VIII). Daman and Eldorado were held harmless by Metco. (*Id.* Exs. IX, X).

In May, 1963, IIT considered numerous companies, including defendant MW as potential infringers and began to learn about their processes.

Although IIT's attorney believed that "a law suit would be a meaningless expense," in March, 1964, IIT agreed to bring "at least one but not more than one infringement suit." (*Id.* Ex. II, at 7). Soon afterwards, IIT reconsidered suing Metco as a contributory infringer, (*Id.* Ex. VIII), and renewed its attempt to license Metco (*Id.* Ex. XIV), which effort was rejected by Metco on the grounds that the patent was invalid (*Id.* Ex. XV).

Defendant MW was among sixteen companies listed by IIT in July, 1964, as ones which may be infringing the Bradstreet Patent (*Id.* Ex. XVI). Later that year, offers to license and notices of infringement were sent out to at least 412 companies, none of which accepted a licensing agreement and some of which indicated that Metco held them harmless. (*Id.* Ex. II, at 7–8). Plaintiff, subsequent to this abortive licensing campaign, continued to urge IIT to sue for infringement of the Bradstreet Patent. (*Id.* Exs. XVII, XVIII, XIX).

By February, 1966, plaintiff believed that IIT was not interested in patent litigation, but that IIT wanted to arrange a settlement with it. (*Id.* Ex. XX). Two years later, IIT paid plaintiff $75,000, assigned the Bradstreet Patent to plaintiff and cancelled their prior agreement.

Plaintiff claims its last contact with Metco was in July, 1965, and its last contact with Metco's customers was in March, 1966. This law suit was first filed by plaintiff in July, 1968. Thus, the facts clearly show that this action was not commenced until over seven years after Metco's customers received infringement notices and were held harmless and over three and one-half years after the mass notices of infringement were mailed. During all this time, even if the claim of infringement was not being abandoned, at no time, except for the aforementioned notices, was Metco or any of its customers notified that the claim was being pressed. Baker Mfg. Co. v. Whitewater Manufacturing Co., 430 F.2d 1008, 1013 (7th Cir. 1970). As in *Baker*, we know of no demand for compensation which followed any notice of infringement. *Id.* at 1014. There is some evidence of sporadic talk, but no evidence of diligent action. Even accepting plaintiff's timetable, the initial program of notice and lack of perseverance was followed by a period of two or three years of total silence until the suit was filed.

Whatever conflicts may have existed respecting the doctrine of laches in this district, the latest and most complete statement of subject may be found in *Baker*. In that case, a patentee was bar-

red by laches from claiming infringement where it had waited more than nine years after first giving defendant notice of its claimed patent infringement before bringing suit and where plaintiff had some correspondence concerning cross licensing during the early part of that period but remained silent for the final seven years. The Seventh Circuit held that where there is unreasonable delay in bringing a patent infringement action, "the burden is on the patentee to excuse" such a delay and "under such circumstances there is a presumption that an alleged infringer has been damaged." *Id.* at 1009.

The instant action, in certain important areas, is quite similar to the *Baker* case. First, it appears that Continental and IIT were both aware of Metco's sales of refractory oxide flame spray powders to its customers, of Metco's refusal to obtain a license under the Bradstreet Patent because of invalidity, and of Metco's policy of holding its customers harmless from patent action regarding the Bradstreet suit. In spite of this awareness, however, Continental and IIT failed to attempt to establish their rights in the proper forum until almost nine years after the patent had issued, and Metco, at least, engaged in allegedly infringing activities.

Plaintiff has not satisfactorily met the burden, clearly stated in *Baker,* to assert a reasonable excuse for this delay. As noted, the initial delay was made to allow sufficient time to achieve some commercial success. Several years later, after the mass mailing campaign failed to produce licensees, another decision to delay suit was made on economic grounds:

> "Then while all was going on we got an estimate * * * and a simple little suit * * * would cost us about $50,000. And from no individual defendant could we expect to get anything near this amount in recovery. This I believe led to the management decision not to sue infringers." (Deft.'s Laches Memorandum, Ex. II, at 8.)

However, just as it was unreasonable for Baker to delay pursuing his claimed patent rights until litigation would be worthwhile, so was it unreasonable for IIT and Continental to have delayed their suit. See Baker Mfg. Co. v. Whitewater Mfg. Co., 430 F.2d 1008, 1014–1015 (7th Cir. 1970). As in *Baker,* plaintiff has not asserted that it was without means to finance a law suit. *Id.*

Under *Baker,* such unexcused delay raises a presumption that an alleged infringer has been injured. *Id.* at 1009. The operating theory is that the alleged infringer, having good reason to believe the patentee abandoned or at least considered worthless its claims, worked to build up his business. See *Id.* at 1011. This presumption has not been met, much less overcome, by plaintiff.

Moreover, in this case, the theory describes the fact. Defendant's Vice-President in charge of engineering has related a pattern of somewhat interrupted, but still longterm, growth for Metco's refractory oxide materials sold for flame spraying:

| Year | Total Pounds Sold |
|------|-------------------|
| 1959 | 13,901 |
| 1960 | 16,928 |
| 1961 | 30,761 |
| 1962 | 29,194 |
| 1963 | 26,405 |
| 1964 | 32,425 |
| 1965 | 44,722 |
| 1966 | 86,323 |
| 1967 | 80,052 |

(Ingham Aff. in Support of Defendants' Laches Summary Judgment Motion, ¶ 3.) The sizable increases in 1961 and 1964 are especially interesting since it was during the former time that Metco informed its customers that it would hold them harmless to infringement actions and during the latter time that IIT conducted its unsuccessful mass notice and licensing campaign.

The cases upon which plaintiff relies pre-date *Baker,* and, therefore, are of little import. The most recent but still pre-Baker case cited is Photon, Inc. v. Eltra Corp., 308 F.Supp. 133 (N.D.Ill. 1969). There the Court held laches inapplicable although the plaintiff had

learned of the infringement seven years prior to bringing the suit. However, in that case, plaintiff indicated its intent to enforce its patent, defendant recognized some economic virtue to it, and both parties were engaged in settlement negotiations in an attempt to resolve their dispute without litigation. The instant situation presents neither the intent, the recognition, nor the negotiations found in the *Photon* case. Moreover, since *Baker*, the patent enforcer has a clear burden of excusing his delay and overcoming a presumption of injury, neither of which was accomplished here.

In conclusion, we find that plaintiff slept on its rights for an inexcusably prolonged period of time—almost nine years. During this period of non-pursuit, defendants' sales increased over six-fold. Under these circumstances, and the *Baker* decision, the defense of laches is applicable to defendant Metco and its customers Ayer and MW, barring any relief sought by plaintiff. Summary judgment on the issues of laches is granted to defendants and denied to plaintiff. The cross-motions for summary judgment on the issues of validity and infringement become moot.