**Dennis GURGONE, Michael E. Daly, Michael F. Bruen, and Patrick Carroll, Plaintiffs,**

v.

**CITY OF CHICAGO, an Illinois Municipal Corporation, Harold Washington, Mayor of the City of Chicago, and Charles A. Pounian, Commissioner of the Department of Personnel, Defendants.**

No. 84 C 1007.

United States District Court, N.D. Illinois, E.D.

May 29, 1984.

William J. Harte, William J. Harte, Ltd., Chicago, Ill., for plaintiffs.

James D. Montgomery, Corp. Counsel, Donald Hubert, Donald Hubert & Associates, Chicago, Ill., for defendants.

### MEMORANDUM ORDER

BUA, District Judge.

This case was brought by plaintiffs to enforce the provisions of the 1972 consent decree entered in *Shakman v. Democratic Organization of Cook County, reprinted in Shakman v. Democratic Organization of Cook County,* 481 F.Supp. 1315, 1356 app. (N.D.Ill.1979). The plaintiffs are individuals who were terminated by the City, reinstated pursuant to an order of this Court in 1980, and again terminated in 1983. Before the Court is the defendants' Motion to Dismiss the Complaint or Alternatively, to Dismiss Harold Washington and Charles ·A. Pounian as Individual Par-

ty-Defendants to the Complaint for Violation of the Reinstatement Order and Violation of the *Shakman* Decree. For the reasons stated herein, defendants' Motion to Dismiss the Complaint is granted in part and denied in part.

The plaintiffs' complaint is in two counts. The first count alleges that the defendants have violated the orders of this Court directing them to reinstate the plaintiffs, without interruption in employment benefits, to positions of employment similar in duties, grade levels, and pay, to the positions which they held prior to their initial termination. The second count alleges that by improperly and illegally terminating the plaintiffs in 1983, the defendants were again in violation of the *Shakman* decree.

Defendants' Motion to Dismiss contends that Count I of the complaint should be barred by the doctrine of laches and by estoppel as to plaintiffs Gurgone, Daly, and Bruen, and that Count II should be dismissed as to all defendants for failure to state a claim. Furthermore, it is claimed in the alternative that the complaint fails to state a claim against the individual party-defendants for violation of the *Shakman* decree. Finally, defendants contend that the complaint should be dismissed because it is not verified as required by U.S.Dist.Ct. —N.D.Ill.Civil Rule 18. These assertions will be addressed *seriatim* in the context of the facts and allegations concerning each individual plaintiff.

### I. *Dennis Gurgone*

From 1965 until his first termination in 1979, plaintiff Gurgone was an employee of the City of Chicago, first in the Department of Buildings and later in the Department of Inspectional Services. During the period immediately prior to his initial termination, Gurgone held the position of Director of Administration in the Department of Inspectional Services. Gurgone was terminated from that position on October 15, 1980, allegedly because of his admitted support of Richard M. Daley.

Pursuant to a settlement order, Gurgone was reinstated to City employment on November 1, 1980. At that time, Gurgone was given the position of Assistant to the Commissioner of the Department of Inspectional Services at the same grade and rate of pay as he had enjoyed prior to the initial termination. Thereafter, in January, 1981, Gurgone's title was changed to Special Assistant of Inspectional Services.

Under the settlement, it was apparently understood that the position Gurgone was to be reinstated to be one with responsibilities commensurate with his knowledge and prior experience. Nevertheless, under neither title was Gurgone given any significant duties or responsibilities. Indeed, as Special Assistant of Inspectional Services, it is alleged that Gurgone's sole duty was to inspect business signs over public ways to verify the payment of City fees. Instead of being placed in a management or administrative level position, Gurgone contends that he was placed in virtual isolation in violation of the settlement.

To remedy the foregoing situation, Gurgone, by way of affidavit, states that once each month, from November, 1980 on, he spoke with his immediate supervisor in hopes of gaining some meaningful duties. When this proved to be unfruitful, Gurgone contacted his former attorneys, John C. Tucker and William Staszek of the law firm of Jenner and Block, who wrote a series of letters to James Daley of the Corporation Counsel's office. These letters stated that if nothing were done, plaintiff would be forced to come before this Court to obtain relief. While these letters did not result in any improvement in the situation, on May 21, 1981, Gurgone's attorneys received a proposed job description for Gurgone's position. Because he felt the duties of that job description were not consistent with his status, Gurgone rejected it. Thereafter, Gurgone's attorneys told him to "sit tight" and indicated that they were in constant contact with the City. At about that time, Gurgone admits, he realized that no purpose was being served by his continued contact with his attorneys and consequently he ceased communications with them.

From May, 1981, until his most recent termination, Gurgone made no efforts to

reacquire substantial job duties save for hoping that either a new city budget or a new administration would resolve his predicament. Obviously, his hopes never came to fruition and, on September 13, 1983 he was again terminated, this time from a position with no responsibilities which was obviously economically expendable.

On November 23, 1983, Gurgone filed a Freedom of Information Request regarding his final termination. On January 9, 1984, the City informed Gurgone that it had made a review and search and that no files other than the personnel files were found to exist and that no information was found in the personnel files.

## II. *Michael E. Daly*

For the entire ten years of his career with the City, Michael E. Daly was employed by the Department of Finance as a Deputy Real Estate Agent. On November 14, 1979, Daly was terminated from his position, allegedly because of his admitted political support of Richard M. Daley.

On December 13, 1980, this Court entered a default judgment in favor of Daly and against the City, and ordered the City to reinstate Daly to the position he held immediately prior to this termination. On April 1, 1981, Daly was allowed to return to his former title; however, upon his return he was informed that he was being assigned to inventory control, a position which involved duties substantively different from those he had previously performed, in contravention of this Court's order. After rejecting these duties, Daly was assigned to an isolated office and was given absolutely nothing to do.

Like plaintiff Gurgone, Daly initially contacted attorneys Tucker and Staczek of Jenner and Block, who, in the same letters in which Gurgone was discussed, also attempted to get Daly assigned some meaningful work. In April, 1981, the City responded with a job description which encompassed duties in both real estate and personal property. While he accepted the portion of the job description which concerned real estate, he rejected the majority of it as it assigned him duties in the area of personal property as well as clerical work. Thereafter, the job description was modified to reflect that roughly 70 percent of Daly's duties were to be in real estate with the remainder in personal property. Daly accepted the real estate portion of the job description, but again rejected the personal property aspects of the job. Subsequently, again in a letter which also discussed Gurgone, Daly's attorney stated that while Daly was willing to be flexible, he was not willing to be shunted off into preparing a list of personal property and that if no reasonable job description was forthcoming, he would insist that he be given precisely the same duties and responsibilities as he had before his termination. Again, no resolution was forthcoming and, save for one phone call in early 1982, Daly had no further contact with attorneys Tucker and Staczek after September, 1981.

In roughly September, 1981, a new Comptroller, Anthony Fratto, assumed office. Daly immediately contacted Fratto in hopes of resolving his situation, but was again unsuccessful.

From September, 1981 to May, 1982, no progress was made on Daly's behalf. While Daly continued to attempt to contact his attorneys, he was unsuccessful except on the one occasion discussed above. On that occasion, Mr. Tucker called Daly and asked about his job situation. After being informed of Daly's unchanged status, Tucker stated that he would see what he could do.

In May, 1982, Ms. Laurie Cray was appointed as the Assistant Comptroller in the Real Estate Division. When Daly informed Cray of his situation, she indicated that she would attempt to remedy it. However, when Daly wrote up a list of his past duties, Cray became outraged and informed Daly that he had listed her duties. Cray then gave Daly a list of what Daly calls "nonfunctional" tasks, many of which had already been completed.

Near the end of June, 1982, Daly was again given a list of duties to perform by

Cray. However, these duties were not within Daly's realm of expertise or authority and ultimately no real responsibility was given Daly at that time.

On April 15, 1983, Daly again contacted Comptroller Fratto reminding him of Daly's predicament. On April 29, 1983, Daly sent an additional memo to Fratto in which it was related that Daly had been told by Cray that it might finally have been time to give Daly some work to do. However, Daly also told Fratto that Cray had once told Daly, "Maybe we are not through with *Shakman* for you yet."

On June 6, 1983, in response to a request from Cray, Daly filled out an updated job description in which he stated that he had been given no duties since he had returned to work in 1981. Soon thereafter, Daly spoke with Joan Cole, the Assistant Commissioner of the Department of Personnel, and asked about his situation. While Cole said that personnel Commissioner Pounian would be meeting with the new Comptroller, Cole never returned Daly's phone calls on the matter. Shortly thereafter, Daly himself spoke with the Comptroller, Walter Knorr, who recognized that this Court might not be pleased with the City's treatment of Daly. While Mr. Knorr allegedly promised to resolve Daly's problem, he never did and on September 13, 1983, Daly was terminated from his admittedly nonfunctional and expendable position.

### III. *Michael F. Bruen*

Michael F. Bruen was made the Director of Licensing, Registration and Permits in the Department of Inspectional Services immediately prior to being terminated in early January, 1980. A City employee for 14 years, Bruen was reinstated to City employment on September 16, 1980 pursuant to a settlement order and given the position of Assistant Director of Licensing, Registration and Permits.

Bruen states that when he agreed to take the position of Assistant Director, he did so on the premise that he would be placed in a position with a large amount of authority, similar to that which he had enjoyed prior to being terminated. Neverthe-less, in actuality the duties Bruen were given were largely clerical and, despite his title, did not involve any responsibility concerning the issuance of permits.

For several months following his reinstatement, Bruen kept his attorneys, John Tucker and William Staszek of Jenner and Block, abreast of his status. While Bruen received no written communications from either the City or his attorneys, Staszek did tell Bruen to remain patient and flexible. Thereafter, while Bruen assumed that Jenner and Block was negotiating with the City on his behalf, no results were forthcoming.

Following Bruen's reinstatement, Bruen's supervisor and successor as Director of the Bureau of Licensing, Registration, and Permits, Herman Moses, was well aware of Bruen's situation and, in January, 1981, attempted to resolve Bruen's status. However, this attempt was unsuccessful as Moses was instructed by the Commissioner of Inspectional Services, William Duggan, that Bruen was to be given neither authority nor responsibility involving permits.

Since early 1981, Bruen admits, nothing has been done in the way of attempting to improve Bruen's situation. Bruen, a known supporter of Richard M. Daley, merely hoped that he could maintain the status quo in order to protect his compensation security and secure an improved position with a change in administrations. On September 16, 1983, Bruen was terminated from his admittedly economically expendable position.

### IV. *Patrick Carroll*

In January, 1980, Patrick Carroll was terminated from his position as a chauffeur in the Department of Health, a position which he had held since March 20, 1979. On September 24, 1980, pursuant to a settlement order, Carroll, also a Daley supporter, was reinstated to his position. On September 12, 1983, Carroll was again terminated from City employment, effective September 15, 1983.

At the time he was terminated for the second time, Carroll learned that the City had subtracted the nine months which Carroll had been out of work following his initial termination from Carroll's seniority credit, allegedly in violation of the settlement.[1] An exit interview report, which Carroll refused to sign, shows that Carroll's starting date with the City was December 8, 1979, despite the fact that Carroll's 1979 Internal Revenue Service Wage and Tax Statement reflects that Carroll made $17,607.60 working for the City that year. Clearly Carroll did not begin work with the City on December 8, 1979, but long before that. Nevertheless, when Carroll was terminated for the second time, he learned that one individual who had six months less actual seniority than Carroll, but three months more security according to the City's modified records, had been retained. Carroll's second termination was putatively because of a reduction in force.

## Discussion

### Count I

As the Court has previously noted, the defendants argue that as to plaintiffs Gurgone, Daly, and Bruen, Count I should be dismissed based on the doctrine of laches. A decision on the issue of laches rests within the sound discretion of the trial court. *Baker Manufacturing Co. v. Whitewater Manufacturing Co.*, 430 F.2d 1008, 1009 (7th Cir.1970). This discretion, while broad, is not unfettered by appropriate standards. *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979). However, where, as here, a case involves government employment, the court is bound by public policy which requires the prompt assertion of the employee's rights so that government service is disturbed as little as possible and two salaries are not paid for a single service. *United States ex rel. Arant v. Lane*, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919), *quoted in Brown v. United States*, 418 F.2d

442, 444 (5th Cir.1980). It is well settled in this Circuit that the plaintiff bears the burden of explaining its delay in bringing suit. *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 340 (7th Cir. 1982); *Baker Manufacturing Co.*, 430 F.2d at 1011–15. *See, also, Shakman v. Democratic Organization of Cook County*, (Petition of Joseph Galvin), 549 F.Supp. 801 (N.D.Ill.1982).

From the facts set out above, it is clear that the claim of Dennis Gurgone is barred by the doctrine of laches. While Gurgone clearly made an effort early on to gain some real authority, since May, 1981, despite his constant threats to apply to this Court for relief, he has done nothing, hoping instead that a change in the political winds would bring him relief. In the opinion of this Court, Gurgone's failure to sufficiently explain 28 months of inactivity bars the instant lawsuit. Given the prejudice presumedly suffered by the City, a governmental employer, Gurgone's failure to assert his claims, either to the City or to this Court, for such an extended period is unreasonable and thus barred by laches.

Michael Daly's situation appears distinct from that of Dennis Gurgone. Like Gurgone, Daly first attempted to proceed through his attorneys. However, unlike Gurgone, when Daly recognized that his attorneys were making little headway, on numerous occasions he personally contacted various high officials in both the Personnel Department and the Department of Finance while at the same time attempting to at least contact his attorneys to ascertain what, if any, progress had been made. In addition, he attempted to negotiate a job description, hoping that something of satisfaction would come of it. From the record it does not appear that Daly sat idly by, hoping that his mayoral candidate would gain office and take care of him, but instead made a continuous effort to obtain relief. Therefore, while Daly quite likely would have been better off had

---

**1.** Under the settlement, Carroll was to be given the same benefits and rate of pay as he enjoyed as of the date of his termination, plus any increases in benefits and pay which he would have received had he been working between December, 1979 and September, 1980.

he applied directly and immediately to this Court for relief, he has sufficiently explained his delay in filing. Daly's claim is not barred by laches or estoppel and may proceed as to Count I.

■ Michael Bruen, like Gurgone and Daly, first attempted to obtain compliance with the settlement order through his attorneys. When this proved unsuccessful, Bruen contacted his supervisor, an approach which also failed. Between January, 1981, and his termination in September, 1983, Bruen apparently did nothing in the way of improving his situation.

Bruen's inactivity for roughly 32 months is not excused by any explanation contained in the record. Like Gurgone, Bruen has failed to sustain his burden of explaining the delay in filing the instant lawsuit. Therefore, this Court holds Bruen's claims to be barred by laches.

### Count II

As to each plaintiff the defendants have moved to dismiss Count II. The defendants argue, and this Court agrees, that Count II alleges no facts or conduct in addition to that alleged in Count I and that Count II is merely duplicative of Count I.

Count II alleges that by terminating the plaintiffs in 1983, the City was again in violation of the *Shakman* decree and that such terminations were "the direct result of the defendants' placement of the plaintiffs in economically expendable positions due to their political affiliations." No allegation of conduct, aside from the terminations from expendable positions, is made.[2]

■ It is well settled that an individual may be terminated from employment for a valid reason, even if an invalid reason for such termination exists. This is so as long as the invalid reason is not the motivating factor behind the discharge. *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Nekolny v.*

*Painter,* 653 F.2d 1164 (1981). In the case at bar, Count II alleges that the plaintiffs were discharged from expendable positions and that the placement of the plaintiffs in such positions was politically motivated. As the Court reads Count II, the portion dealing with the motivation for placement of the plaintiffs in expendable positions is actually a reassertion of the behavior alleged in Count I. No new conduct is alleged; instead, it is claimed that the plaintiffs' discharges arose from their being placed in expendable positions, thus constituting not new *Shakman* violations but continuing violations of the Court's prior orders. As such conduct is addressed in Count I, the only new allegation is that the plaintiffs were discharged from admittedly expendable positions. This alone is clearly not actionable under *Shakman.* Count II should therefore be dismissed as to all plaintiffs.

### Defendants Pounian and Washington

The defendants have moved to dismiss defendants Pounian and Washington because of the lack of specific allegations of personal involvement on the part of these defendants. Because this motion is unopposed, it is granted and defendants Washington and Pounian are hereby dismissed.

### Verification of the Complaint

■ The defendants have also moved to dismiss the complaint because it is not verified. Under U.S.Dist.Ct.–N.D.Ill.Civil Rule 18, proceedings for civil contempt shall be initiated by affidavit. As the plaintiffs' complaint does not meet this requirement, leave will be given to verify the complaint within 30 days hereof.

### CONCLUSION

For the reasons stated herein, all claims as to plaintiffs Gurgone and Bruen are dismissed. As to plaintiffs Daly and Carroll, only Count II is dismissed. Thus, as

---

**2.** Although Carroll's layoff was not due to economic expendability but lack of seniority, for purposes of ease the Court will refer to Carroll's situation using the same terms as with the other three plaintiffs.

to plaintiff Daly, the defendants' Motion to Dismiss Count I is denied. Defendants Washington and Pounian are hereby ordered dismissed.

Because the claims of the remaining plaintiffs are separate and distinct, their claims are hereby ordered severed. The claim of plaintiff Daly shall remain under the instant case number and leave is hereby given to Daly to verify his complaint within 30 days of this order.

The claim of plaintiff Carroll is hereby dismissed with leave given to file a verified complaint under a separate case number within 30 days of this order.

IT IS SO ORDERED.