**JENN–AIR CORPORATION, Plaintiff-Appellant,**

v.

**PENN VENTILATOR CO., Inc., Defendant-Appellee Cross-Appellant.**

**Nos. 71–1446, 71–1447.**

United States Court of Appeals, Third Circuit.

Argued April 14, 1972.

Decided June 27, 1972.

C. Frederick Leydig, Wolf, Hubbard, Leydig, Voit & Osann, Chicago, Ill., for appellant in No. 71–1446 and appellee in No. 71–1447.

Dana M. Raymond, Brumbaugh, Graves, Donohue & Raymond, New York City, for appellant in No. 71–1447 and appellee in No. 71–1446.

Before McLAUGHLIN, VAN DUSEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

This is a patent infringement suit involving three of plaintiff's power ventilator patents. There was a fourth patent which plaintiff had originally claimed defendant had infringed. Plaintiff withdrew that charge prior to trial and at plaintiff's request, the district judge dismissed it with prejudice at the opening of the trial herein.

Application for his first patent was made by Mr. Jenn, its inventor, July 2, 1945. The patent, 2,458,607, hereafter called '607, was allowed Mr. Jenn April 10, 1951. He assigned it to his plaintiff corporation December 1, 1967. The patent expired April 10, 1968, a year prior to the trial of this appeal. In its suit, plaintiff seeks damages for infringement of its '607 patent by defendant up to six years prior to its present action.

Plaintiff corporation has been producing Mr. Jenn's '607 ventilator since 1947. Defendant and others have been making and marketing what is substantially the Jenn exhauster since about 1955. The trial judge sharply and accurately found that the placing of the '607 ventilating device produced a novel result which was non obvious. He soundly held that the placement of the exhauster on a building external wall " * * * had special advantages not found in prior art ventilators, especially in connection with their use in restaurants, including inter alia placement of noise outside the room ventilated, ease of installation, lower cost and greater resistance to the elements." We thoroughly agree with those findings. It is not contested that '607 has had and continues to have fine commercial success.

We also agree that defendant's various models of its so called "Wall Domex" are and have been flagrantly, since defendant has been putting them on the market, as the district court found, " * * * mechanically and functionally the same as plaintiff's '607 in every material respect."

Defendant still formally asserts that it did not infringe on the '607 patent claims. We find no merit whatsoever in defendant's contention as here presented. Turning from that, defendant contends that the Jenn-Air Corporation is barred by its laches from collecting damages from the infringer defendant. The latter pins its hopes on what it states, are non contested facts that Jenn-Air delayed at least nine years in filing suit against defendant for the latter's glaring misuse of plaintiff's '607 patent. There is nothing in this record to warrant a ruling of actual prejudice to this defendant from any delay in plaintiff starting its lawsuit against this defendant for its unconscionable infringement of plaintiff's '607 patent through the years. There was some delay in starting that cause but there was no harm to defendant in that, all that happened to it was its continuance of counterfeiting and selling its infringing

product. As we held in Sobosle v. United States Steel Corporation, 359 F.2d 7, 12 (1966) "Laches, of course, requires more than lapse of time; as an equitable defense it is determined in the light of all the existing circumstances and requires that the delay be unreasonable and cause prejudice to the adversary." In Holmberg v. Armbrecht, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946), Mr. Justice Frankfurter for the Court held that in a question as to whether there should be equitable intervention against a plaintiff such as here " * * * that which is decisive for the chancellor's intervention, namely, whether the plaintiff has inexcusably slept on his rights so as to make a decree against the defendant unfair." In the earlier decision of Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 84 L.Ed. 754 (1939) the Court there held that in the type of problem before us, plaintiff's delay must be unexcused and prejudicial to defendant.

■■ There can be no mistake about the above governing law on this question. The delay must be prejudicial to the defendant. The fact which defendant wholly overlooks is that plaintiff was protecting its '607 patent in a suit against another infringer from November 1963 to April 18, 1966. Plaintiff in December 1967 applied to bring its '607 patent into this litigation. Under these facts, it is sound law as plaintiff urges that it is not necessarily bound to take on more than one infringer at a time.[1] As we have seen, plaintiff was busy with its action against another infringer from 1963 to April 18, 1966. In December 1967 it did proceed against defendant. Again, as stated by plaintiff, there is no

delay of nine years or even four years by plaintiff sleeping on its rights. There is nothing factual in the trial transcript pointing to any prejudice whatsoever to defendant, actually during the entire time it was busily engaged in turning out infringements of the Jenn-Air invention. To be successful in its theory that plaintiff, owner of this most worthwhile help to the entire ventilator industry, must lose out in its court ruled proper claim, defendant must show, as it alleges, that there had been nine years of unexcused delay by plaintiff in its cause against the defendant and that defendant had been prejudiced thereby. We have seen the delay was not nine years or as much as six years. We have also seen that although defendant said it had been prejudiced there is nothing in the record indicating that this was a fact. To the contrary, defendant never even tried to prove that. What it did was assert that plaintiff must affirmatively prove that its delay, if any, in pursuing defendant for its infringement damages did not prejudice defendant. That is not the law; it is the defendant who must prove that there was unexcused delay on the part of the plaintiff and that defendant was prejudiced as a result. There has been no proof of either in this appeal. In that situation plaintiff's '607 claim against defendant is not barred by laches.

In strong addition to the above conclusion with reference to the laches contention, that defense appeared in defendant's answer to plaintiff's second and supplemental complaint. Plaintiff served demands for answers to its interrogatories calling for defendant's reasons justifying that defense. The inter-

---

[1]. In an opinion by Judge Learned Hand for the Second Circuit, Clair et al. v. Kastar, Inc., 148 F.2d 644, 646 (1945), the situation was much the same as in this appeal. The Court held that "The defense of laches is without merit." There the plaintiffs sued an alleged infringer and as the Court said " * * * were not obliged * * * to sue everyone whom they might afterwards seek to bring within their patent." The plaintiffs patentees

lost that case at the trial level, appealed and after that claim had been settled started suit against related infringers. As Judge Hand held "While a patentee is getting his patent sustained he is not bound to assert his claims to their fullest scope by suing every conceivable infringer." See also Montgomery Ward & Co. v. Clair, 123 F.2d 878 (8 Cir. 1941) which was followed by the Second Circuit Clair opinion, supra.

rogatories were never disputed by defendant but the latter simply refused to answer them. Plaintiff endeavored to obtain an order that defendant either support its laches defense or that the said defense be stricken. *The court noted during the trial that "Now the effect of that (defendant not answering the interrogatories) was really to preclude effective discovery on that issue by the plaintiff."* (Emphasis supplied). Plaintiff's motion was not passed upon until after the trial had taken place and during the drafting of the opinion. The motion was then denied. The court held that plaintiff had not been prejudiced by defendant's refusal to answer the interrogatories; that plaintiff could have and did obtain whatever information it desired by its own advices and that defendant had brought in a new attorney a month before trial time. There had been an attorney representing defendant in this matter for over four years prior to that new lawyer's appearance in the litigation.

We find that the defendant's proposition that plaintiff is deprived of its claim of damages for infringement by defendant of its '607 patent through its laches is without merit. We further must conclude under the facts before us that defendant's refusal to answer plaintiff's interrogatories regarding the basis of defendant's defense of laches was completely improper and of serious consequences to plaintiff's presentation of its case.

The judgment of the district court as to plaintiff's claim for damages against defendant for infringement of its '607 patent will be reversed and this branch of the instant suit will be retried with respect to the amount of damages sustained by the plaintiff.

Plaintiff's remaining patents in this suit are 3,085,647 ('647) and 3,110,357 ('357). Both these patents were applied for by Mr. Jenn and William E. Morrison, the '647 on November 7, 1960 and the '357 on November 12, 1963. The patents are each titled "Acoustic Curb." The '647 patent was assigned to plain-

tiff before it was issued. The '357 patent was assigned to plaintiff after it had been issued. These patents dealt with reduction of noise produced by the ventilator setup. The district court held that the two patents had been infringed by defendant but that they " * * * are non-inventive and obvious." It was also held that "As a matter of acoustics generally, there is no significant difference between plaintiff's '357 and '647 patents and the disclosures in Solzman, Tutt and Kurth taken as a whole. As an acoustical device per se, plaintiff's patents are obvious and non-inventive over the disclosures in Tutt, Solzman and Kurth." The opinion below states the "Trane Catalog, Defendant's bulletin SC-88 "Sound advice for Effective Sound Control" and "Defendant's bulletin SCE-89 entitled "Extruded Aluminum Sonotrol Curb," call for the conclusion that said two patents are non-inventive and obvious." Finally it was held that "Assuming plaintiff's patent ('647 and '357) were valid, we would find that defendant is guilty of infringement * * *."

The key to these two patents is of course the Supreme Court's Graham v. John Deere Co., et al., 383 U.S. 1, 13, 86 S.Ct. 684, 691, 15 L.Ed.2d 545 which quotes Section 103 of the 1952 Patent Act as providing that a patent may not be obtained " * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious *at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.* Patentability shall not be negatived by the manner in which the invention was made." (Emphasis supplied).

In that all important opinion by Mr. Justice Clark, pp. 35 and 36, 86 S.Ct. p. 702 and 703, he notes that "These legal inferences or subtests do focus attention on economic and motivational rather than technical, issues and are, therefore, more susceptible of judicial treatment than are the highly technical facts often

present in patent litigtaion. \* \* \* Such inquiries may lend a helping hand to the judiciary which, as Mr. Justice Frankfurter observed, is most ill-fitted to discharge the technological duties cast upon it by patent legislation. Marconi Wireless Telegraph Co. of America v. United States, 320 U.S. 1, 60, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943). They may also serve to *'guard against slipping into use of hindsight.'* (Monroe Auto Equipment Co. v. Heckethorn Mfg. and Supply Co., 332 F.2d 406, 412 (6 Cir. 1964) *and to resist the temptation to read into the prior art the teachings of the invention in issue."* (p. 36, 86 S.Ct. p. 703). (Emphasis supplied).

 It cannot be denied that at the time when plaintiff's '647 and '357 patents were granted, the ventilator industry had been for many years unsuccessfully endeavoring to sizably reduce the noise of power roof exhausters. '647 has two baffles and '357 has one. The sole so called prior art produced by defendant, having a baffle, is Trane catalog which used that baffle *parallel* to the air flow. It is not denied that the plaintiff's construction of its baffles and its placing them transverse to the air flow together with the entire other independent building of its curbs admittedly made the '647s and '357s ten times more effective than any of the exhibits offered by defendant. It should be again mentioned that the Trane catalog baffle was the only item that apparently could be presented which suggested a baffle. In Trane that called for the baffle's installation, as we have noted, *parallel* to the exhauster's air flow. There were only two witnesses on behalf of defendant re '647 and '357, one of these was defendant's vice president who added nothing to the vital sound control feature of the '647 and '357 patents. The other defense witness was called as an expert in the field. He, Mr. Ostergaard, consulted by Princeton University on the noise situation as to power exhausters, suggested an acoustically lined duct (he did not remember its length) with an elbow section connecting with the exhaus-

ter and either tearing the classroom ceiling to conceal the duct and run the duct across that ceiling or waterproof the duct so that it could be run across the roof. Mr. Ostergaard acknowledged the disadvantages of his solutions but saw no alternatives. He knew of plaintiff's patented curb but brushed it aside as too *new* and downgraded it generally. Returning to the Deere law, there is nothing in the material cited by the defendant and relied upon by the trial court, to justify the defense contention that '647 and '357 were obvious and non-inventive. From all of the facts before us it is apparent that the true test of obviousness i.e. whether "the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability will not be negatived by the manner in which the invention was made. § 103 Patent Act, 1952, 35 U.S.C.A. § 103 (1964 ed)." The record does not justify the conclusion that the decried patents of plaintiff which the defense expert had no use for are obvious and non-inventive. Ostergaard was not just "\* \* \* a person having ordinary skill in the art to which said subject matter pertains." This was the one expert who clearly put forth the defense view of plaintiff's patents. He proclaimed them not obvious and non-inventive. Under oath that they were simply not worth having, not as we have stated, because the plaintiff's patents were obvious, non-inventive, but because they were no good, had not been proven of any value. Yet it was those three authentic patents that proved of amazing value to the whole power ventilator industry.

 It seems to us that unfortunately the erroneous desperate effort of defendant to avoid its liability for infringement of all three, that as to '647 and '357, it succeeded in the district court on the mock up of obviousness and non-inventive. Yet the defendant did in-

fringe those two patents as it did the '607. It follows that the '647 and '357 judgments should be and will be reversed.

Plaintiff, also in this litigation, sues defendant for unfair competition and libel. The court finds that plaintiff makes out a substantial case on unfair competition against the defendant. We also find that this matter did not receive enough attention in the trial below, undoubtedly because plaintiff's patents were the outstanding issue. Therefore that phase of the appeal will be remanded to the district court for retrial on the merits, including proof of plaintiff's claim for damages arising out of said claim of unfair competition.

The majority of the court finds that plaintiff's libel suit against defendant is barred by the applicable statute of limitations. I dissent from that view.