**NAXON TELESIGN CORPORATION,**
**Plaintiff,**

v.

**BUNKER RAMO CORPORATION, et al., Defendants.**

**No. 78 C 2904.**

United States District Court,
N. D. Illinois, E. D.

Jan. 23, 1981.

W. Melville Van Sciver, Chicago, Ill., for plaintiff.

Melvin Goldenberg, McDougal, Hersh & Scott, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Naxon Telesign Corporation ("Naxon") has filed a two-count Complaint charging patent infringement and antitrust violations and has moved for leave to amend its antitrust count to allege fraudulent concealment. Defendants oppose the motion to amend and have moved for summary judgment on both counts. For the reasons stated in this memorandum opinion and order:

(1) Naxon's motion for leave to amend the antitrust count is granted.

(2) Defendants' motion for summary judgment on the patent infringement count is granted as to each of defendants Stewart-Warner Corporation * ("Stewart-Warner"), Bunker Ramo Corporation ("Bunker Ramo") and Merrill Lynch, Pierce, Fenner and Smith, Inc. ("Merrill Lynch").

(3) Defendants' motion for summary judgment on the antitrust count is also granted.

### Facts

United States Letters Patent No. 3,218,-824 were issued to Irving Naxon on October 25, 1966 and subsequently assigned to plaintiff Naxon. Naxon has never marketed a product embodying its patent (the "Naxon Patent") but asserts that it has built several prototypes and continues to be interested in using the patent commercially. Naxon's infringement claim charges that a solid state traveling message sign developed by Stewart-Warner and marketed by Bunker Ramo infringes the Naxon Patent.

On December 11, 1967 Stewart-Warner and Bunker Ramo entered into an agreement covering the Stewart-Warner product, which was not then the subject of a patent. Stewart-Warner agreed to sell a large quantity of its electronic illuminated traveling message devices to Bunker Ramo and contemporaneously granted an exclusive royalty-free worldwide license to use, lease and sell the devices in the "Financial Community." [1] Under Paragraph 24 of the agreement the *exclusive* nature of the license was to terminate in 66 months (on June 11, 1973).

From the parties' submissions on the summary judgment motion it appears that Stewart-Warner last manufactured any equipment under the Bunker Ramo purchase agreement in the first quarter of 1970 and did not thereafter manufacture or offer for sale the same type of equipment to any other company, nor did it do any advertising or sales promotion work with respect to brokerage office traveling message signs (deposition of Stewart-Warner's Vice-President Potter 26–27). As for Bunker Ramo, Naxon's memorandum in opposition to summary judgment states that its leasing of the displays (for example, to brokerage offices like that of Merrill Lynch) has continued at least through the time suit was brought (Bunker Ramo answer to Naxon Interrogatory 20). Naxon's memorandum also reflects that leases from Bunker Ramo to lessees like Merrill Lynch are for two years, automatically renewable for successive one-year periods unless terminated (Plaintiff's Deposition Ex. 246 ¶ 10).

* See however footnotes 5 and 8.

1. That term was defined as "all applications of information display pertaining to the dissemination of prices, volume, trends, ranges, earnings data, averages, dividend data, and other statistical data emanating from stock and commodity exchanges on securities, commodities, bonds, and futures, and in addition, shall include information from financial news services."

Naxon became aware of the possible infringement in 1970 after Stewart-Warner had obtained a patent (the "Andrews Patent") on its device. Irving Naxon (himself a patent attorney) stated in his deposition (pp. 129–35) that he conferred with Naxon's patent counsel in 1970 and that they *then* agreed that the Stewart-Warner device infringed Claims 12 and 13 of the Naxon Patent. It was not however until May 1973 that Naxon first sent notices of claimed infringement to Stewart-Warner and Bunker Ramo. Within three months thereafter, after some exchange of correspondence, Stewart-Warner sent a "final letter" rejecting Naxon's infringement claims "firmly and irrevocably." On September 12, 1973 Naxon replied:

> Answering all of your letters, including your "final reply" of August 27, it would appear to anyone who knows patent law that you do not know what you are talking about!
>
> While we are arranging with Patent Counsel for litigation against your company and The Bunker-Ramo Corporation, we are also, as required by law, going to put on notice other known users, installers, maintenance and repair people associated with your equipment, warning them regarding contributory infringement and any and all of their own separate liabilities under the law.
>
> Please be so advised.

There was no further communication of any kind from Naxon to any of the defendants until this action was filed in July 1978, just under five years after Naxon's September 1973 letter.

### Alleged Patent Infringement

Although counsel for both parties have favored the Court with extensive briefs, neither has addressed the issues fully. One of the gaps in treatment, shared by both plaintiff and defendants, is their joint characterization of defendants' principal patent infringement defense as one of laches rather than estoppel.

That difference is of course a material one in its consequences in patent litigation. As our Court of Appeals stated in *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975):

> Judge [now Justice] Stevens pointed out in *Continental Coatings Corporation v. Metco, Inc.*, 464 F.2d 1375, 1379 ([7th Cir.] 1972), "there is indeed an important difference between laches and estoppel." This difference is carried over into the effects that the two defenses have upon litigation. In a patent suit, the effect of laches is merely to withhold damages for infringement prior to the filing of the suit. Estoppel, however, forecloses the patentee from enforcing his patent, and the infringement suit must fail *in toto*.

*Advanced Hydraulics* also reaffirmed Justice Stevens' earlier opinion in identifying one critical fact that typically marks out estoppel situations in patent cases, *Continental Coatings*, 464 F.2d at 1380 (quoted in part, 525 F.2d at 479):

> Since we are implicitly accepting an estoppel defense which was advanced under the laches label, it is appropriate to identify explicitly the fact we consider critical. That fact is the infringement notice threatening prompt and vigorous enforcement of the patent, which was then followed by a period of unreasonable and unexcused delay. Having made such a threat, the patentee was thereafter estopped to deny that it was then ready, willing and able to establish the validity of the patent in court if necessary. A comparable fact was present in each of the cases in which this court has implicitly or explicitly sustained an estoppel defense.

That critical fact was equally present in the case now before this Court.

Naxon seeks to construct a distinction based on the fact that its delay between the threat of enforcement and the filing of suit was "only" four years and ten months rather than at least six years.[2] That distinction

---

**2.** There is no statute of limitations as such barring suits for patent infringement, but 35 U.S.C. § 286 bars recovery of damages for infringement that occurred more than six years

is not supported by the case law. In *Advanced Hydraulics* the comparable gap was five years (only two months more than here), and the Court there pointed to other decisions that had found unreasonable delay *as a matter of law* based on lesser periods during which plaintiffs had left defendants waiting for the other shoe to drop (525 F.2d at 481 n.2):

> While we have not made an exhaustive search of the cases, two have come to our notice where the length of delay was less than 5 years: *Kimberly Corporation v. Hartley Pen Company*, 237 F.2d 294 (9th Cir. 1956), where the period was 4 years, and *Continental, supra*, where the period of continuous delay without a claim of infringement was 3 years.

▮ All that Naxon asserts as claimed justification for the 58-month delay is Irving Naxon's effort to find an attorney willing to handle the matter on a contingent fee basis, although he acknowledged that Naxon could have afforded to hire the most expensive trial lawyer in Chicago to represent it in the litigation had it chosen to do so (Pl. Naxon Dep. 267–68). *Baker Mfg.*, 430 F.2d at 1010, cited *Whitman v. Walt Disney Productions, Inc.*, 148 F.Supp. 37, 39–40 (S.D.Cal.1957), approved, 263 F.2d 229, 231 (9th Cir. 1958), for the proposition that *lack* of funds is no excuse for delay in bringing suit. And in *Baker Mfg.*, 430 F.2d at 1014, the Court of Appeals noted that the plaintiff, like Naxon here, made no claim that it lacked the means to finance litigation. Certainly Naxon's asserted excuse creates the equivalent of an unexplained as well as an unjustified delay, and the Court so rules as a matter of law (there being no genuine issue as to any material fact).

▮ However, defendants gloss over the necessity—for defenses of laches and estoppel alike—that the delay must have operated to the *prejudice* of defendants. *Ad-*

---

before suit is filed. By analogy a number of patent cases have used the fact that a plaintiff has delayed for six years as the basis for *presuming* that the delay has injured the defendant. See discussion in *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1009–10

---

*vanced Hydraulics*, 525 F.2d at 479, makes clear the applicability of that universally accepted equitable proposition to patent cases (emphasis added):

> Mere delay is not sufficient, but where "deferment of action to enforce claimed rights is prolonged and inexcusable *and operates to defendant's material prejudice*," laches is "an effectual bar" to recovery.... Estoppel, on the other hand, as Judge Lindley once defined it, "arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party *to his prejudice.*"

At this point, the fact that we are dealing with a summary judgment motion makes the allocation of the burden of proof an important consideration. True enough, any disputed issue of material fact precludes summary judgment, and all reasonable factual inferences must be resolved against the movant. *Dreher v. Sielaff*, 636 F.2d 1141, 1143 n.4 (7th Cir. 1980). But the question whether ties go against the first baseman or the runner—the question of the effect of *no* evidence on an issue of fact—must be resolved.

▮ Here too the question is clearly settled by our Court of Appeals' decisions. When a plaintiff has slept on its rights for more than six years, the presumption is that the delay has *injured* the defendant—that the necessary element of *prejudice* has been established. *Baker Mfg.*, 430 F.2d at 1010. There is the added presumption that the delay itself was unreasonable. *Id.*

▮ Again Naxon seeks to argue that the six-year period has not been met, measured from the notice of infringement to the time suit was filed, and that the delay before the notice of infringement was reasonable. But the argument fails on both counts:

---

(7th Cir. 1970). But that six-year line for shifting the burden of proof is very different from the six-year line Naxon seeks to draw in this case. This opinion will also deal hereafter with the six-year calculation in the burden-of-proof context.

(1) As a matter of law, the relevant period of delay (unless excused) runs from the time Naxon knew of the claimed infringement (1970, according to Irving Naxon's own testimony[3]) to the institution of litigation in 1978.[4]

(2) Naxon claims justification for the delay from the facts that during the 1970–71 period Mrs. Naxon was ill and that Irving Naxon was, in addition to running the Naxon business, president of Naxon Utilities Corporation and Naxon Building Corporation. Neither reason carries any weight, and there is thus no material issue of fact that overcomes the presumption of unreasonableness.

Consequently defendants are correct that the doctrine of *Baker Mfg.* and its progeny looks at the entire eight years of delay by plaintiff and *presumes* damage to defendants.

 Defendants reach that point in the analysis and stop, choosing to be unmindful of the requirement that the delay must have caused prejudice to defendants. Mere presumptions of damage may be rebutted, and it is therefore necessary to see what the facts show:

(1) As for Stewart-Warner, the evidence that it ceased its manufacture in 1970 negates any prejudice from plaintiff's delay, and there is no evidence of other factors that would demonstrate any damage to Stewart-Warner. Looked at in the light most favorable to plaintiff, the evidence thus rebuts the presumption of damage, and the motion for summary judgment in favor of Stewart-Warner on estoppel grounds alone would have to be denied. Plaintiff cannot have it both ways, however. If Stewart-Warner did not make, use or sell any allegedly infringing devices after 1970, no infringement by Stewart-Warner occurred by definition during the six-year period immediately preceding this action. Accordingly there is no material factual dispute and summary judgment in favor of Stewart-Warner is proper under 35 U.S.C. § 286.[5]

(2) As for Bunker Ramo, the evidence is that during the long interval of silence after Naxon's threatened enforcement action Bunker Ramo continued its leasing operations using the allegedly infringing machines. That evidence is totally consistent with the presumption of prejudice. See for example the references to business proceeding unmolested after notice of infringement in *Advanced Hydraulics*, 525 F.2d at 481. Equally important, Naxon has offered not a shred of evidence to meet its burden of overcoming the presumption, so that no material fact issue bars summary judgment in favor of Bunker Ramo on estoppel grounds.

(3) Finally as to Merrill Lynch, the lease terms previously referred to (the periodic renewals) would indicate prejudice as well. Even if not, however, the same absence as just discussed regarding any proof *negating* prejudice keeps the presumption operative and justifies summary judgment.

### Alleged Antitrust Violations

On May 7, 1979 Naxon amended the Complaint to include antitrust allegations against defendants, focused on the December 11, 1967 agreement between Stewart-Warner and Bunker Ramo. Naxon charges that the exclusive license provisions of that agreement violate Sections 1 and 2 of the Sherman Act. Without conceding the sub-

---

3. Even without that acknowledgement of knowledge, the timeclock would begin to run when Naxon should have known of the alleged infringement by the exercise of reasonable diligence. *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980). Even if Naxon had been "unsure" of the infringement, it had the duty promptly to investigate and determine if infringement existed. *Pearson v. Central Illinois Light Co.*, 210 F.2d 352, 356–57 (7th Cir. 1954).

4. Thus in *Continental Coatings* the "period of complete silence only lasted three years," but the overall eight-year period of delay was the basis for the presumption of prejudice. See discussion in *Advanced Hydraulics*, 525 F.2d at 481.

5. Because summary judgment on estoppel grounds is inappropriate, Stewart-Warner's summary judgment must be limited to its non-liability for past damages.

stantive argument,[6] defendants contend that because the exclusivity clause expired by its own terms on June 11, 1973, more than four years before this action was brought, the antitrust claim is barred by the statute of limitations, 15 U.S.C. § 15b.[7]

In response Naxon has proposed an amendment to the Complaint adding the allegation that defendants fraudulently concealed their activities, thus tolling the statute of limitations. As an initial matter it must be observed that the proposed amendment charges fraudulent acts in conclusory terms without satisfying the particularity requirement of Fed.R.Civ.P. 9(b). That lack would justify denial of the motion to amend, but the Court will grant the motion simply to address the legal issue it poses.

■■■ Naxon must however buttress its allegations with *facts* to withstand a motion for summary judgment, and it has not done so. Its assertions prove only that Naxon was *unaware* of the allegedly unlawful activity, not that defendants concealed their acts. On that score, Naxon points to the fact that when Irving Naxon corresponded with Douvas (legal counsel for defendants) in 1973, Douvas did not reveal the exclusive licensing arrangement. There are two simple and conclusive answers:

(1) Naxon's correspondence did not involve a request for a license, but rather charged infringement, so that defendants' failure to respond by disclosing the terms of license arrangements could scarcely constitute "concealment."

(2) At the time of Douvas' first letter in June 1973, the exclusive license had already expired by its terms. Non-disclosure of an expired exclusive arrangement can scarcely be equated with "fraudulent concealment."

■■■ Naxon also contends that defendants' alleged antitrust violations are of a continuing nature because they still affect the market. Its theory is that although Stewart-Warner no longer sells machines to Bunker Ramo, Bunker Ramo still leases the machines it obtained under the agreement. Because Bunker Ramo still reaps the benefits of the exclusive agreement, it allegedly continues to violate the Sherman Act.

That argument is not supported by the relevant authorities. While Naxon may purportedly continue to be *damaged* by the situation (again assumed solely for purposes of argument), the sole claimed anti-competitive activity was the exclusive license arrangement, which ended in 1973. Limitations begin to run from the time of the last overt act causing injury to plaintiff. *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 572–73 (4th Cir. 1976); *Poster Exchange, Inc. v. National Screen Service Corp.*, 517 F.2d 117, 124–28 (5th Cir. 1975). As the Court of Appeals for the Fifth Circuit put it in *Poster Exchange*:

It remains clear nonetheless that a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action.

As the Seventh Circuit has stated in applying the same doctrine and linking the commencement of the limitations period to the termination of the antitrust-violative contract, "the touchstone of our inquiry must be the nature and extent of defendants' behavior, not the duration of plaintiff's injury." *Baker v. F & F Investment*, 420 F.2d 1191, 1200 (7th Cir. 1970), *cert. denied*, 400 U.S. 821, 91 S.Ct. 40, 27 L.Ed.2d 49 (1970). Defendants' only agreement that even arguably violated the antitrust laws—the exclusive license—terminated

---

6. This Court also assumes only *arguendo* that the exclusive license poses antitrust problems. Because the Court finds the statute of limitations question both clear and dispositive, it need not reach the merits of the antitrust issue.

7. Defendants also contend that Naxon lacks standing to pursue this antitrust claim. Their position has considerable force and does not appear to be met by Naxon's make-weight arguments to the contrary. However, for the same reason stated in note 6, the Court will not deal with the standing issue.

more than four years before this action was brought. *See, Woodbridge Plastics, Inc. v. Borden, Inc.*, 473 F.Supp. 218, 220 (S.D.N.Y. 1979), *aff'd*, 614 F.2d 1293 (2d Cir. 1979).

Naxon's final argument is that under the now-expired terms of the Stewart-Warner-Bunker Ramo agreement, defendants continue to commit antitrust violations in addition to those stemming from the now-terminated exclusive license:

1. If Bunker Ramo uses a display device manufactured by someone other than Stewart-Warner it loses its exclusive license, but retains a nonexclusive license (this provision has of course become moot).

2. Stewart-Warner will train Bunker Ramo personnel.

3. Stewart-Warner will indemnify Bunker Ramo for any liability arising from the product.

4. Stewart-Warner will bring an action against any infringers.

5. If Stewart-Warner were to develop any improved display device, it would make available to Bunker Ramo an exclusive license "upon terms and conditions to be mutually agreed upon."

None of those provisions has the anti-competitive effect necessary to ground antitrust claims. Most are conventional contract terms that involve no market effects even arguably injuring plaintiff, while the last is totally conjectural. These terms cannot by themselves constitute the basis for antitrust liability.

### Conclusion

Naxon's motion for leave to amend the antitrust count of its Complaint is granted. This Court finds and determines that there is no genuine issue as to any material fact and that all defendants are entitled to a judgment as a matter of law on both Naxon's patent infringement claim and its antitrust claim. As indicated, however, the patent infringement judgment in favor of Stewart-Warner (but not the other defendants) is limited to non-liability for any alleged prior infringements.[8]

---

8. Because of the strong policy disfavoring piecemeal appeals, our Court of Appeals discourages the routine entry of Rule 54(b) findings (most recently in *Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir. 1980)). If defendants desire a final judgment without the need to determine the issues of validity and infringement of the Naxon Patent, Stewart-Warner (which has apparently not engaged in manufacture of its own units for over 10 years) may wish to consider the possibility of stipulating, without conceding either validity or infringement, that for the remaining term of the 1966 Naxon Patent it will not make, use or sell its own display devices. That would make the only open phase of this litigation moot and permit entry of final judgment.