**MOTOROLA, INC., Plaintiff,**

v.

**CBS, INC., Defendant.**

**No. 84 C 3427.**

United States District Court,
N.D. Illinois, E.D.

March 26, 1986.

On Motion for Reconsideration
May 14, 1986.

Robert P. Cummins, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., Donald J. Lisa, Michael Stolarski, Motorola, Inc., Schaumburg, Ill., for plaintiff.

Theodore W. Anderson, William M. Wesley, J. Bradford Leaheey, Neuman, Williams, Anderson & Olson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This patent infringement case is before us on the motion of defendant CBS, Inc. ("CBS") for summary judgment. For the reasons given below, the motion is granted in part and denied in part.

### FACTS

The facts are undisputed. The patent at issue, U.S. Patent No. 3,546,355 ("the "Maynard patent") was issued on December 8, 1970, to Motorola, the assignee of the inventor Maynard. Oversimplified, the Maynard patent claims electronic circuitry which automatically controls organ music.

On July 27, 1972, the United States Patent and Trademark Office ("Patent Office") declared an interference proceeding between the Maynard patent and a reissue application for U.S. Patent No. 3,548,066 by Alfred B. Freeman, not a party to this litigation. On April 11, 1975, the Board of Patent Interferences ("Patent Board") held that the Maynard patent was prior to Freeman's additional claims to his patent. On May 3, 1980, Judge Roszkowski of this court affirmed the holding of the Patent Board. *Freeman v. Motorola, Inc.*, No. 75 C 1644, Memorandum op. (N.D.Ill. May 3, 1980).

In 1978, Donald J. Lisa, now a vice president of Motorola, began "licensing and enforcing the Maynard patent." Lisa Affid. at 1. He did not begin a detailed infringement study, however, until the fall of 1980. *Id.* at 1, 2.

Licensing negotiations between Motorola and CBS began in January 1981 and appear to have been terminated in September 1982. On April 20, 1984, Motorola brought this action, alleging that CBS has infringed two claims of the patent since the date the Maynard patent issued. CBS filed this motion for summary judgment, claiming that Motorola's action is barred by laches and estoppel. The issue has been fully briefed by the parties.

### DISCUSSION

 Laches and estoppel are equitable defenses whose appropriateness must be decided upon the facts of each particular case. *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Dana Corp. v. American Precision Co.*, 221 U.S.P.Q. 1098, 1102 (N.D.Ill.1984). Though similar concepts, they are distinct defenses. Laches forecloses retroactive relief; estoppel bars prospective relief. *See Naxon Telesign Corp. v. Bunker Ramo Corp.*, 517 F.Supp. 804, 807 (N.D.Ill.1981), *aff'd*, 686 F.2d 1258, 1261

(7th Cir.1982); *Advanced Hydraulics*, 525 F.2d at 479. Thus, under laches, if the patentee unduly delays bringing its claim to court, it is barred from recovering damages for infringements prior to the filing of the suit. *A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697, 699 (7th Cir.1982). Under estoppel, if the patentee additionally takes affirmative action to induce the belief that it has abandoned its claims against the alleged infringer, then it is also barred from obtaining an injunction or damages for post-filing infringements. *Id.* at 701.

**Laches**

■ For a claim to be barred by laches, the patentee's delay must be unreasonable, inexcusable, and materially prejudicial to the alleged infringer. *Id.* at 699; *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734, 220 U.S.P.Q. 845 (Fed.Cir.1984). However, it is now well established in this circuit that a delay of over six years in asserting patent rights raises a presumption that the delay is both unreasonable and materially prejudicial to the defendant. *Aukerman*, 693 F.2d at 699; *Naxon*, 686 F.2d at 1263; *Advanced Hydraulics*, 525 F.2d at 479; *Dana*, 221 U.S.P.Q. at 1102; *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 831 (N.D.Ill.1974), *aff'd. sub nom Technitrol, Inc. v. NCR Corp.*, 513 F.2d 1130 (7th Cir.1975).[1] Once the defendant has proved such delay, the burden shifts to the patentee to rebut the presumption. *Aukerman*, 693 F.2d at 699; *Dana*, 221 U.S.P.Q. at 1102.

Thus, the plaintiff will be barred from seeking past damages by laches unless it can (1) rebut the presumption of prejudice; (2) rebut the presumption of unreasonable delay by showing a good excuse for the delay; or (3) show that the infringer has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor. *Naxon*, 686 F.2d at 1263 n. 7; *Dana*, 221 U.S.P.Q. at 1102.

The commencement date of laches delay is the date on which the patentee had knowledge of the defendant's allegedly infringing activities or, in the exercise of reasonable diligence, should have known of defendant's activities. *Id.* Motorola contends that it did not have knowledge of the alleged infringement by CBS until it completed its study sometime in 1981, and that the period of delay, if any, should not begin until then. We disagree. The evidence indicates that Motorola had knowledge of possible infringement since July 14, 1975. On that date, Richard Harasek, then manager of Motorola's Scalatron Division, stated in an interoffice memorandum:

> Motorola, Inc. has a patent, No. 3546355, in Fred Maynard's name.... This patent covers virtually the entire consumer organ industry on the automatic accompaniment section.... Number of infringing companies [are] 21–25, we currently have 19 identified with model numbers.

On the cover page to this memorandum, Mr. Harasek states: "We will be working with Vince Rauner [Vice President for Patents, Trademarks, and Licensing] to determine the best plan of action in regards to the known infringement cases." CBS' Memorandum in Support, Appendix E.

Motorola thus had sufficient knowledge of potential infringement to inform alleged infringers of its intention to enforce its patent rights as early as July 1975. This date is eight years and nine months prior to the filing of suit against CBS and is suffi-

---

1. The only statute of limitations involving patent infringement suits limits the period of recovery of damages to six years, not a patentee's right to maintain an action. Courts, guided by the principle that "laches is an equitable doctrine 'not fixed by an unyielding measure, but to be determined in each case under its factual situation,'" use the six-year statutory period for damages as a frame of reference for the application of the doctrine of laches. This is consistent with traditional equity practice which considers the passage of time equivalent to a comparable statute of limitations as presumptive of laches. Thus, the courts have held that the lapse of six years from the time the patentee has either actual or constructive knowledge of the alleged infringement, creates the presumption that the delay is unreasonable and shifts the burden to the plaintiff who then must excuse the delay. *Naxon*, 686 F.2d at 1262–63 (citations and footnotes omitted).

cient to raise the presumptions of unreasonableness and prejudice.

In attempting to rebut the presumption, Motorola argues that the delay between 1975 and 1980 was not unreasonable because the Maynard patent was the subject of a patent interference proceeding that was not finally resolved until 1980. Motorola apparently relies on the principle that delay in suing an infringer is not unreasonable when the party asserting the patent is engaged in other litigation against other infringers. *See, e.g., Jean–Air Corp. v. Penn Ventilator Co.,* 464 F.2d 48, 50 (3d Cir.1972). This exception is based on the propositions that a patent owner is not bound to take on more than one infringer at a time, *id.,* and that by bringing a suit against one infringer, he has not slept on his rights, *id.,* so that the delay in bringing suit against other infringers is therefore reasonable or excusable. *Id.*

We have some doubt, however, that a patent office interference proceeding constitutes "other litigation" within the meaning of that exception. First, such a proceeding is over the priority of the patent right, and not a claim for infringement. *See* 35 U.S.C. § 135. Second, the proceeding was brought against Motorola, not by it. The policy behind the "other litigation" exception of excusing the plaintiff's delay against some infringers because it has actively enforced its rights against other infringers is therefore inapplicable. Motorola concedes "that the patent office proceedings and subsequent federal litigation did not technically detract from Motorola's right to enforce the Maynard patent...." Motorola's Memorandum in Opposition at 3. In fact, Motorola had taken steps to enforce the patent during the patent office proceedings. By April 1975, when the Patent Board ruled on the priority of the Maynard and Freeman patents, Motorola had already engaged in extensive licensing negotiations with Yamaha. On October 2, 1975, after the appeal from the Patent Board ruling had been filed in district court, Vincent Rauner, Motorola Vice President for Patents, Trademarks and Licensing wrote to the chief of Yamaha's patent department:

We expect to proceed with a licensing program in the U.S. where we find several potential users of the patent. In this respect, you may appreciate that under our law the patent is in full force and effect. Accordingly, infringement actions can be brought.

CBS' Memorandum in Support, Appendix F.

Thus, Motorola's claim that it was awaiting the final outcome of the interference appeal before proceeding against possible infringers is inconsistent with its attempt to license Yamaha in 1975 and its statement to Yamaha that it could and would proceed against other infringers. *See Technitrol,* 376 F.Supp. at 833. Motorola was well aware that it could continue to enforce its rights under the patent during the interference proceeding and appeal.

Furthermore, even if we were to consider the interference proceeding "other litigation," the existence of other litigation does not automatically excuse delay in bringing the suit. *Advanced Hydraulics,* 525 F.2d at 480. The alleged infringer must have actual notice of the other litigation. *Id.; Baker Manufacturing Co. v. Whitewater Manufacturing Co.,* 430 F.2d 1008, 1014–15 (7th Cir.1970); *Anchor Stove & Range Co. v. Montgomery Ward & Co.,* 114 F.2d 893, 895 (7th Cir.1940); *Technitrol,* 376 F.Supp. at 833. The patent owner is charged with providing that notice, *Advanced Hydraulics,* 525 F.2d at 481, not only to all known infringers, but to "all known parties who are thought to be infringers...." *Id.* It appears that Motorola never provided notice of the interference proceeding to CBS.

Motorola also appears to suggest that the license negotiations with CBS from February 1981 to March 1982 excuses at least that much of the delay. The general rule, however, is that license negotiations do not necessarily toll the running of time for laches purposes. *Aukerman,* 693 F.2d at 700. For such tolling, "the negotiations must ordinarily be continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays."

*Id. See also Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1377–78 (7th Cir.1972); *Technitrol*, 376 F.Supp. at 832. The court in *Aukerman* went on to point out, as had the courts in *Continental Coatings* and *Technitrol*, that the negotiations between the parties had been sporadic, unfruitful, and one-sided. *Aukerman*, 693 F.2d at 700–01. The court concluded:

> It may be that the "jousting" ... between the parties was "tactical" on both sides, but that does not excuse plaintiff. With a delay of this length [six and one-half years], there has to be something more than continued jousting, at least where there is no real possibility of success on the part of the patentee in obtaining the solid type of license it wants.

*Id.* at 701.

Because the burden has shifted to Motorola to rebut the presumption of unreasonable delay, the burden is on Motorola to show that license negotiations between the parties were continuous and bilaterally progressing, with a fair chance of success in order to excuse the period of delay. It has not made that showing. These negotiations appear to have been nothing more than limited "jousting." CBS has filed an affidavit stating the following facts, none of which have been contradicted by Motorola. On February 15, 1981, Motorola sent a notice of infringement to CBS. On April 8, 1981, CBS responded that it was not using the Maynard patent, and suggested that no negotiations were necessary. *See* Affid. of Spencer E. Olson, Exh. 3, p. 4. CBS also sent Motorola the patent for its "walking bass" feature, the service manual for its Chord–O–Matic feature, and the patent application for its "Digichord" feature, these being the circuitry it claimed to be using in the allegedly infringing organs.[2] *See id.* Exhs. 4, 5, 6. Over a year later, on July 20, 1982, Motorola responded to CBS' letter of April 8, 1981. Motorola outlined its posi-

tion further and stated that it hoped licensing negotiations could begin without delay. The parties then met once, on September 2, 1982, during which Motorola reiterated its claims of infringement. Neither party presents any evidence of any further negotiations after that meeting.

These appear to be negotiations that never got off the ground. At best, they are negotiations that were sporadic, unfruitful, and one-sided, with little chance of success. Even if this nineteen and one-half month period were excused, the period of inexcusable delay would still be just under seven years.

Finally, Motorola appears to suggest that CBS has not proven that it was prejudiced by the delay. However, just as a delay of over six years creates a presumption that the delay was unreasonable, so too it creates a presumption that "the delay has *injured* the defendant—that the necessary element of *prejudice* has been established." *Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1010 (7th Cir.1970) (emphasis in original). *See also Aukerman*, 693 F.2d at 699; *Naxon*, 517 F.Supp. at 808, *aff'd*, 686 F.2d at 1263 n. 7; *Continental Coatings*, 464 F.2d at 1378. Motorola has not overcome this presumption. CBS' sales of organs continued and expanded while Motorola delayed bringing suit. This has been held to be a factor further supporting prejudice to the defendant. *Aukerman*, 693 F.2d at 701; *Advanced Hydraulics*, 525 F.2d at 481; *Continental Coatings*, 464 F.2d at 1378. Although many witnesses are still alive and many documents are still available, the death of the inventor, as here, has been held to support the conclusion of prejudice, *Advanced Hydraulics*, 525 F.2d at 482, and the long time lag has been held to lead inevitably to some loss of memory and doc-

---

**2.** Motorola contends that CBS' reference to the trade labels "walking bass," "Chord–O–Matic," and "Digichord" obfuscates Motorola's claims of infringement. Motorola states that CBS used several different circuits between 1971 and 1984 to implement automatic play of its organs, that these circuits include combinations not covered by the trade labels, and that Motorola has also

accused these unnamed "specific electronic circuits" of infringement. For purposes of this motion, we treat Motorola's claims of infringement as against all of CBS' electronic circuits. Regardless of how the circuits are described, however, Motorola's claims were not timely brought.

umentation. *See Aukerman,* 693 F.2d at 701.

In *Continental Coatings,* the court held that plaintiff's evidence was insufficient to rebut the presumption of prejudice. Here, as in *Continental Coatings,* "[t]o the extent that plaintiff has offered evidence to rebut the presumption of damage, we take the evidence as undisputed and conclude that it is nevertheless insufficient as a matter of law to raise a genuine issue of material fact such as to require a trial on the issue of rebuttal of the presumption." 464 F.2d at 1378 n. 9.

We therefore hold that Motorola's delay in bringing suit against CBS was unreasonable and inexcusable, and that it materially prejudiced CBS. Motorola's action for prefiling infringement is therefore barred by the defense of laches.

### Estoppel

 Estoppel, unlike laches, requires affirmative conduct by the patentee inducing the belief that it had abandoned its claims against the alleged infringer and detrimental reliance by the alleged infringer. *Aukerman,* 693 F.2d at 697; *Naxon,* 686 F.2d at 1264. It "arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Advanced Hydraulics,* 525 F.2d at 479 (quoting *Lebold v. Inland Steel Co.,* 125 F.2d 369, 375 (7th Cir.1941)).

CBS has not even alleged that Motorola took any such additional misleading action. It claims only that "Motorola's failure to sue CBS, or anyone else, gave CBS a justifiable belief that Motorola acquiesced in CBS's position...." CBS' Memorandum in Support at 7.

### CONCLUSION

For the reasons stated, CBS' motion for summary judgment based on laches is granted, barring all prefiling relief. CBS' motion for summary judgment based on estoppel is denied. A status hearing is set for April 15, 1986, at 9:45 a.m.

---

**1.** CBS also sought summary judgment barring all prospective relief on estoppel grounds. We

## ON MOTION FOR RECONSIDERATION

On March 26, 1986, in a memorandum opinion, we granted defendant CBS, Inc. partial summary judgment barring all retroactive relief on the basis of laches.[1] Before us is the motion of plaintiff Motorola, Inc. for reconsideration of that judgment. For the reasons stated below, the motion is denied.

The facts are fully set forth in our earlier opinion and need not be repeated here.

### The Laches Period

Motorola first asserts that we erred in finding that Motorola's first knowledge of CBS' alleged infringement of Motorola's Maynard patent was in July 1975. In choosing that date, we relied on the interoffice memorandum of Richard Harasek, the Manager of Motorola's Scalatron Division, in which he states:

> Motorola, Inc. has a patent, No. 3546355, in Fred Maynard's name.... This patent covers virtually the entire consumer organ industry on the automatic accompaniment section.... Number of infringing companies [is] 21–25, we currently have 19 identified with model numbers.

Motorola relies on the deposition testimony of Vincent Rauner, Motorola's Vice President for Patents, Trademarks, and Licensing, to show that Harasek did not really *know* CBS was infringing its patent in July 1975. Rauner stated,

> [Harasek] would go to a trade show or would look at literature and decide that that particular organ used the patent and come back and count 19 different models whose keys he punched and thought must use the patent.

> \* \* \* \* \* \*

> So what was needed was getting manuals and circuit diagrams and somebody knowledgeable of patent law and operation of the organs and going through to find out that we could indeed establish the patent was being used. I don't be-

---

denied that part of its motion.

lieve that ever happened until we got Don Lisa involved to make such study, and it was a monumental job.

Deposition of Vincent J. Rauner at 75.

Motorola therefore contends that we have held it to an erroneous standard as to the degree of knowledge required to begin the laches period. It contends that it did not have sufficient knowledge in July 1975 to charge CBS with infringement and that it would have in fact been inappropriate to bring suit against CBS on the scant evidence of infringement provided by Harasek. We did not hold, however, that July 1975 is the month in which Motorola should have brought suit against CBS; we held that July 1975 is the month the laches period began to run. We held that based on the knowledge of Harasek (and all those who received his memorandum in July 1975), Motorola should have brought suit against CBS within at most six years of that month.

Upon further review of the evidence and the applicable law, we still believe that Motorola had sufficient knowledge of the alleged infringement to begin with running of the laches period in July 1975, eight years and nine months prior to bringing suit against CBS, thus raising the presumptions of unreasonableness of the delay and prejudice to the defendant.

Even if, as Motorola contends, greater knowledge of infringement was required to begin the laches period, we still believe the presumptions of unreasonableness and prejudice were properly raised. When Rauner was asked at his deposition what Motorola did in 1975 to investigate Harasek's belief that twenty-one companies were infringing Motorola's patent, Rauner responded, "The only thing I can think of was we pressed Yamaha ultimately to sign [a license agreement], which they did not do. . . ." Rauner Dep. at 76. Later, he admitted that "the people necessary to really determine the infringement and evaluate the situation and negotiate it were not doing it." *Id.* at 77. In fact, no one at

Motorola investigated the "known infringement cases" Harasek referred to until the fall of 1980, when Donald Lisa began his study, which lasted two years. Affid. of Donald J. Lisa at 2, 3. If Motorola had begun its study in July 1975 when Harasek wrote, "We currently have 19 [infringing companies] identified," it unquestionably would have had sufficient knowledge of CBS' alleged infringement by July 1977.[2]

As we stated in our earlier opinion, "The commencement date of laches delay is the date on which the patentee had knowledge of the defendant's allegedly infringing activities or, in the exercise of reasonable diligence, should have known of defendant's activities." *Motorola, Inc. v. CBS, Inc.*, 672 F.Supp. 1033, at 1035 (N.D.Ill. 1986) (Grady, J.), citing *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258, 1263 (7th Cir.1982), and *Dana Corp. v. American Precision Co.*, 221 U.S.P.Q. 1098, 1102 (N.D.Ill.1984).

In *Dana*, the court stated,

> While laches will not be imputed to a party who has been *justifiably* ignorant of facts which create his right, mere ignorance will not constitute an excuse for delay in enforcing those rights. "The party must be diligent and make such inquiry and investigation as the circumstances reasonably suggest, and the means of knowledge are generally equivalent to actual knowledge."

221 U.S.P.Q. at 1102 (emphasis by *Dana* court) (citations omitted). The court in *Dana* also relied on this language from the United State Supreme Court's opinion in *Foster v. Mansfield, Coldwater Railroad*, 146 U.S. 88, 99, 13 S.Ct. 28, 32, 36 L.Ed. 899 (1892):

> The defence of want of knowledge on the part of one charged with laches is one easily made, easy to prove by his own oath, and hard to disprove; and hence the tendency of courts in recent years has been to hold the plaintiff to a rigid

---

**2.** This is not to say that Motorola should not have begun investigating even prior to July 1975, but only that CBS has not demonstrated on this summary judgment motion that Motorola should have done so.

compliance with the law which demands, not only that he should have been ignorant of the fraud, but that he should have used reasonable diligence to have informed himself of all the facts.

*Id.* 221 U.S.P.Q. at 1103. *See also Olympia Werke Aktiengesellschaft v. General Electric Co.,* 545 F.Supp. 598, 612 (W.D.Va. 1982), *aff'd,* 712 F.2d 74 (4th Cir.1983).

And directly applicable to this case, the district court in *Naxon* stated,

Even if the [patentee] had been "unsure" of the infringement, it had a duty promptly to investigate and determine if infringement existed.

*Naxon,* 517 F.Supp. 804, 809 n. 3, *aff'd,* 686 F.2d at 1263.

Given what Motorola knew in July 1975, it should, in the exercise of reasonable diligence, have known of the alleged infringement by at least July 1977, six years and nine months before it sued CBS. Thus, even under the later starting date of the laches period urged by Motorola, it was proper to apply the presumptions of unreasonableness and prejudice.

**Prejudice to CBS**

Motorola next contends that we erred in holding that CBS was materially prejudiced by Motorola's unreasonable delay in filing suit. Motorola asserts that we based this holding on three factors: the continuation and expansion of CBS' business; the death of the inventor; and some loss of memory and documentation. Our holding, however, was not based on these three factors, but rather was based on the legal presumption that CBS had been prejudiced by Motorola's delay. In our earlier opinion, we stated,

Finally, Motorola appears to suggest that CBS has not proven that it was prejudiced by the delay. However, just as a delay of over six years creates a presumption that the delay was unreasonable, so too it creates a presumption that "the delay has *injured* the defendant—that the necessary element of *prejudice* has been established.... Motorola has not overcome this presumption."

Memorandum op. at 8 (emphasis in original) (citations omitted).

Thus, the burden has shifted to Motorola to come forward with evidence that CBS was not prejudiced. This Motorola still has not done. It argues that "CBS in effect admits that it has suffered no prejudice" because at the deposition of CBS' patent attorney, Spencer Olson, he asserted that the only prejudice suffered by CBS as a result of Motorola's alleged delay was "not having had an opportunity to change the design or defend against the patent and then continue to use the feature in more and more organs." Affid. of Spencer Olson at 42. Far from an admission that it suffered *no* prejudice, this has long been held to be a factor supporting prejudice to the defendant. *See A.C. Aukerman Co. v. Miller Formless Co.,* 693 F.2d 697, 701 (7th Cir.1982); *Advance Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 481 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *Continental Coatings Corp. v. Metco, Inc.,* 464 F.2d 1375, 1377–78 (7th Cir.1972). In fact it is one of the three factors—those noted above—that we stated in our earlier opinion further support the presumption of prejudice. Memorandum op. at 8.

It is true without the added presumption of prejudice, each one of these additional factors standing alone might not establish prejudice to the defendant. But this is not the question before us, because the presumption does exist in this case, and Motorola has presented no evidence to overcome it.

**CONCLUSION**

For the reasons stated above, Motorola's motion for reconsideration is denied.